**Meadowood, Inc.**
**v.**
**Armstrong**
*[Cite as 4 AOA 310]*

*Case No. 57093*
*Cuyahoga County, (8th)*
*Decided June 21, 1990*

*F. Wilson Chockley, Jr., Walter, Haverfield, Buescher & Chockley, 1215 Terminal Tower, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*Matthew A. Zidar, Zidar and Gallup, 75 Public Square #813, Cleveland, Ohio 44113, for Defendants-Appellants.*

MCMANAMON, J.

In December 1988, Meadowood Country Club ("the club"), a social, recreational, nonprofit corporation, completed sale of its facilities to the City of Westlake ("the city") for $1,121,954.90. A month later the club sought a declaratory judgment to determine the validity of the sale and rights of its associate and certificated members to participate in the dissolution proceeds. The associate member class of defendants filed a counterclaim against the club seeking to establish their entitlement to certificated membership in the corporation. They also cross-claimed against new party defendant trustees individually, alleging breach of fiduciary duties.

The associate members concede that the sale was valid and enforceable, but they appeal the court's determination that they have no right to participate in the proceeds of the dissolution and that the trustees properly denied the associates' applications for certificated membership. They define these issues in two assignments of error, also complaining that they were denied summary judgment. We will consolidate these issues in our review.

The Meadowood Code of Regulations provided for certificated memberships and also empowered the board of trustees ("the board") to create special purpose memberships at its discretion. A prospective certificated member was required to tender $1,000 and, upon approval of the board, received a membership certificate in the club. The Code of Regulations also provided that certificated members were entitled to vote and to share in dissolution proceeds. Pursuant to its authority, the board created an "associate membership" which required a tender of $350 and, upon approval of the board, such members acquired options to become certificated members and the privileges of club membership, exclusive of the right to vote and to share in dissolution proceeds.

Each associate member signed an application form which provides in relevant part:

"Upon acceptance as an Associate Member, I agree and understand as follows:

"* * *

"(d) to an option to purchase, from the date hereof, a certificate of membership for $1,000.00 in accordance with the Code of Regulations of the Club;

"* * *."

During the summer of 1987 the Mayor of Westlake inquired as to a possible purchase by the city of the club facilities. Negotiations ensued as reflected in a special report attached to the minutes of the September 8, 1987 meeting of the board and referenced in the minutes with the following language:

"Offer to sell Club presented by Rock -- see attached report."

At the annual meeting of the voting membership on November 15, 1987, the certificated members approved an offer of sale by the board and the formation of a special committee to sell the facilities and dissolve the club. Westlake City Council approved purchase of the club real estate four days later. Club president Warfield Rock notified all associate members of the sale in a letter dated November 20. Rock also informed them that, though membership would terminate effective November 30, social and recreational activities would continue, free of charge, through December 1987.

Immediately upon this notification, at least eight associate members tendered $1,000 checks in exercise of their options to purchase membership certificates in the club. The board denied these applications for certificated membership and returned the checks.

The club Code of Regulations provided for dissolution only upon the majority affirmative vote of its certificated membership at a special meeting held for this purpose. Realizing the vote taken at the November annual meeting contravened the code, the board called a special purpose meeting on December 22. The reports of the Inspector of Elections disclosed that, at this meeting, the certificated membership approved sale of the real estate, liquidation and dissolution of the club, the indemnification of the trustees, and ratified all of the trustees' prior acts.

The associate members first posit the trial court erred in failing to rule on the parties' pending summary judgment motions.

At the inception of trial, counsel for the parties brought their respective motions to the court's attention. After oral arguments, the court indicated its desire to proceed with opening statements, thus impliedly denying summary judgment to either side. Cf. *Garnett* v. *Meckler* (Mar. 29, 1990), Cuyahoga App. No. 56711, unreported, at 2. Defense counsel stated on the record that he was "* * * assuming the court overruled that motion * * *." His assumption was correct.

Civ. R. 56 requires a party requesting summary judgment to demonstrate that there is no genuine issue of material fact, that he is entitled to judgment as a matter of law, and that reasonable minds could only come to one conclusion, adverse to the non-moving party. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66. Evidence should be construed most strongly in favor of the party opposing the motion. *Morris* v. *Ohio Casualty Ins. Co.* (1988), 35 Ohio St. 3d 45.

The associate members' motion for summary judgment raised issues concerning: when, and if, a valid sale of the club occurred; if the associate members had a contractual right to become certificated; whether the board had the power to close and terminate membership in the club; and whether the trustees were acting in the best interests of the club. Because these were genuine issues of material fact, the trial court properly declined to award summary judgment to either party.

The crux of the associate members' appeal is that the club had a contractual obligation to issue them certificates of membership upon application and tender of the $1,000 fee. They claim that, because the board included an option to buy a certificate of membership in the associate membership package, a binding option contract existed, which required the club to grant them certificated membership upon demand.

A nonprofit corporation may provide its own governing rules and regulations, which supersede statutory mandates. *American Hungarian Federation* v. *Nadas* (1987), 35 Ohio App. 3d 72; *State, ex rel. East Cleveland Democratic Club,* v. *Bibb* (1984), 14 Ohio App. 3d 85. As we have noted, the club Code of Regulations provided for special purpose memberships, to be created at the discretion of the board. The code subjected special purpose members, such as associate members, to the "* * * rules and regulations promulgated by the board." Code of Regulations, Art. VI, para. C.

Corporate records indicate that the board extended the option to buy membership certificates to the associate members "* * * in accordance with the Code of Regulations of the Club."

In social organizations, absent constitutional or statutory prohibitions, the board of trustees has broad discretion to determine who may join. *Ickes* v. *Macedono-Bulgarin National Home or Macedonian Patriotic Organization* (Oct. 19, 1988), Summit App. No. C.A. 13535, unreported.

Upon an applicant's tender of the requisite sum of money, the Code of Regulations required the membership committee to "* * * report to the trustees its recommendations as to the qualifications of all applicants for any class of membership for approval by the trustees." Code of Regulations, Art. V, para. 3.

The code set forth no specific procedure for an associate member to become a certificated member. Therefore, the code procedure for application for "club membership" would ordinarily control an application by an associate member for certificated membership.

The board, however, in its discretion, upon the defendants' initial applications for associate membership, approved their admittance as special purpose members and gave them an option to purchase certificated memberships. Thus, already approved by the board, the associate applicants had only to tender the requisite $1,000 to obtain certificates of membership.

We note the trial court determined the associate members' option to purchase certificates of membership was not an option contract and therefore did not bind the club.

"* * * [t]he relation of the member to the association is partly shaped by the terms of the constitution and by-laws as they exist when he joins or as they are afterwards altered in accordance with provisions for their amendment, but these writings do not constitute a contract in the ordinary sense, and should not finally or rigidly determine the rights of the member and the powers of the association. Other incidents of the relation are found in the judicial requirements for a valid expulsion, and in the actual living purpose of the association over and above the exact wording of its documents. On this view, the closest analogy to the position of the member of an association is to be found in the relation between a stockholder and a corporation, or between a partner and the partnership. Such relations are much more than contracts. The law of associations not for profit thus takes its natural place beside the law of business corporations and partnerships." *Solomon* v. *Edgewater Yacht Club* (1987), 35 Ohio Misc. 2d 1, quoting Chafee, The Internal Affairs of Associations Not for Profit (1930), 43 Harv. L. Rev. 993, 1007-1008.

Webster's New Collegiate Dictionary (1976) defines an option as "the power or right to choose; freedom of choice." The documents in the record describing membership as well as the associate member application forms indicate the board's intention to give associate members the right to choose certificated membership by simply tendering $1,000.

The Code of Regulations empowered the board with "the sole control and management of the property, business and affairs of the corporation * * * [and] * * * to exercise all powers given it by law and by these regulations." Code of Regulations, Art. III, para. B. The code authorized the board to make all rules and regulations governing special purpose members. If the board had wished, in any way, to limit the associate members' ability to purchase certificates of membership, they were fully empowered to create such rules and regulations.

As a result, we find the trial court erroneously failed to recognize the right of the associate members to exercise their options.

We note that the associate member defendants tendered their applications for certificated "club membership" after receiving notice of the club's impending sale and the approaching termination of the special purpose membership.

R.C. 1702.13(C) allows a corporation to terminate membership for any cause "in the manner provided by law, the articles, or the regulations." A member was entitled to notice and a hearing only upon expulsion from the club. Code of Regulations, Art. IX, para. C; *Bay* v. *Anderson Hills* (1984), 19 Ohio App. 3d 136.

The club terminated membership effective November 30 because of the impending sale. Once terminated, a special purpose member has neither rights, privileges, nor interests in the club. *Edgewater Yacht Club, supra.*

We hold, at the outset, that the club acted as a *de facto* corporation throughout these proceedings, regardless of its technical legal status. *Freeman* v. *Westland Builders, Inc.* (1981), 2 Ohio App. 3d 212. See, *e.g., Hines* v. *Cleveland Bd. of Edn.* (1985), 26 Ohio Misc. 2d 15.

Though the defendants' status as special purpose associate members may have ceased on November 30, the club's dissolution was not properly effectuated until the December 22, 1987 special purpose meeting. As long as the club existed, applications for certificates could be tendered. Since we have found the board previously approved these defendants, they needed

only to tender $1,000 apiece to obtain certificated memberships.

We hold the trial court erroneously upheld the board in its attempt to deny the previously approved applicants certificated membership.

The trial court found the defendants' contention that the actions of the trustees breached their fiduciary duty to the club also was not well taken.

R.C. 1702.30(B) provides:

"A trustee shall perform his duties as a trustee, including his duties as a member of any committee of the trustees upon which he may serve, in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances * * *"

We see nothing in the record to contradict the trial court's conclusion that the trustees did not breach any fiduciary duty to the club and its members. Since the associate members were not "club members" as defined by the Code of Regulations, the trustees owed no duty to act in the best interests of the associate members. We will not overrule the decision of a trial court which has determined the facts consistently with the evidence and properly applied the law. See *Freeman* v. *Westland Builders, Inc., supra.*

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

DYKE, P.J., and NAHRA, J., concur.