**HAGANS, Appellee,**

v.

**HABITAT CONDOMINIUM OWNERS ASSN., Appellant.**

[Cite as *Hagans v. Habitat Condominium Owners Assn.*, 166 Ohio App.3d 508, 2006-Ohio-1970.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21021.

Decided April 21, 2006.

510

Linda F. Hagans, pro se.

Christine M. Haaker, for appellant.

VALEN, Judge.

{¶ 1} Habitat Condominium Owners Association ("Habitat") appeals from a judgment of the Miamisburg Municipal Court, Small Claims Division, which awarded Habitat $575 on its counterclaim against Linda F. Hagans, a condominium owner, for assessed fines related to violations of Habitat's rules and regulations.

{¶ 2} On November 4, 2004, Linda F. Hagans filed a small claims action against Habitat, claiming that Habitat had imposed false charges and filed a false mechanics' lien, totaling $2,894.62, in retaliation for her pursuit of claims against Habitat's insurance company for water damage to her condominium. Habitat counterclaimed on the grounds that Hagans had been assessed fines for various violations of Habitat's declaration of condominium ownership and bylaws and that she had failed to pay the fines, which totaled $1,475. Specifically, Habitat sought to recover the following: (1) a $25 late fee for the failure to pay a fine prior to June 21, 2001; (2) five separate $25 late fees for failure to pay her account balance; (3) a $50 second-offense fine, a $100 third-offense fine, and a $500 fourth-offense fine for failing to replace her shed door; (4) a $75 fine for a parking violation; (5) a $50 second-offense fine and a $100 third-offense fine for noise violations; and (6) reimbursement of $450 for replacement of the shed door by Habitat. Habitat also sought to recover a lien charge of $250, as well as interest and reasonable attorney fees.

{¶ 3} On December 14, 2004, a trial was held before a magistrate. Hagans presented a billing statement from Habitat, a notification from Habitat of the lien for unpaid charges, and a letter to Hagans from Habitat's insurer. Habitat submitted numerous documents, including its declaration, bylaws, and rules and regulations. The parties jointly offered a photograph of Hagans's damaged shed door. Although a transcript of the trial is not part of the record, several individuals testified for both parties.

{¶ 4} On February 15, 2005, the magistrate found in favor of Habitat on Hagans's claim and dismissed Hagans's complaint with costs assessed against

her. With regard to Habitat's counterclaim, the court found that Habitat was entitled to one month of condominium fees, to a $25 late fee for nonpayment of a fine levied prior to June 21, 2001, to $50 as a shed-door fine, and to $450 for purchasing and installing a new shed door. The magistrate concluded that Habitat was not entitled to continually charge late fees for nonpayment of fines, that Habitat had failed to meet its burden of proof on its noise-violation claims, and that it was not entitled to the costs of preparing and filing a lien nor to attorney fees. The magistrate thus entered judgment in favor of Habitat in the amount of $575.[1]

{¶ 5} Habitat and Hagans both filed objections to the magistrate's ruling. On March 7, 2005, the trial court overruled both parties' objections. The court indicated that because neither party had provided a transcript of the trial as required by Civ.R. 53(E)(3)(b), the court had "no means by which to ascertain the testimonies of the various witnesses adduced at trial." The court thus entered judgment in favor of Habitat in the amount of $575, plus interest and costs.

{¶ 6} Habitat raises three assignments of error, which we will address in an order that facilitates our analysis.

{¶ 7} I. "The trial court erred in refusing to review Habitat's objections to the magistrate's decision."

{¶ 8} In its first assignment of error, Habitat claims that the trial court erred by refusing to review the magistrate's ruling without a transcript of the trial. Habitat claims that it had objected to the magistrate's legal conclusions and that the submission of a transcript was not required by Civ.R. 53(E)(3) in such circumstances.

{¶ 9} Civ.R. 53(E)(3), which governs a party's objections to a magistrate's decision, provides:

{¶ 10} "(b) Form of objections. Objections shall be specific and state with particularity the grounds of objection.

{¶ 11} "(c) Objections to magistrate's findings of fact. * * * Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available."

---

1. Although the magistrate awarded $575, the total of the enumerated fines was $525. In addition, the monetary award apparently did not include the one month of condominium fees that the magistrate found was owed to Habitat.

{¶ 12} Thus, while Civ.R. 53(E)(3) requires a party to support objections to the magistrate's factual findings with a transcript, a transcript is not required to support objections to conclusions of law.

{¶ 13} With the exception of its objection to the finding that Habitat had failed to meet its burden of proof on its noise-violation claims, all of Habitat's objections to the magistrate's decision challenged the magistrate's interpretation of Habitat's declaration, bylaws, and rules and regulations. Whether the magistrate properly construed the provisions in Habitat's declaration, bylaws, and rules and regulations is a question of law, not of fact. Since Habitat's declaration, bylaws, and rules and regulations are part of the record and were available to the trial court, the trial court erred when it failed to review Habitat's objections to the magistrate's construction of Habitat's declaration, bylaws, and rules and regulations.

{¶ 14} With regard to the noise violations, however, the magistrate found that Habitat had failed to meet its burden of proof. This finding is one of fact, not of law. In the absence of the trial transcript, we cannot properly evaluate the magistrate's factual findings. In accordance with Civ.R. 53(E)(3), the trial court properly overruled Habitat's objections regarding the noise violations.

{¶ 15} The first assignment of error is sustained in part and overruled in part.

{¶ 16} III. "The trial court erred by interfering in the business decisions of Habitat and the implementation of Habitat's declaration, by-laws, and rules and regulations in the absence of any finding of fraud, bad faith or abuse of discretion."

{¶ 17} In its third assignment of error, Habitat asserts that pursuant to R.C. 1702.30(B), its determinations that a condominium owner has violated its rules must be upheld by the court unless the owner establishes that Habitat's actions were in bad faith, fraudulent, or an abuse of discretion. In particular, Habitat claims that the trial court improperly held that Habitat—not Hagans— had the burden of proof to establish that the fines for violations were properly imposed.

{¶ 18} Habitat's reliance upon R.C. 1702.30 is misplaced. R.C. 1702.30(B) is concerned with the liability of the directors of a nonprofit corporation in the discharge of their fiduciary duties, not with the corporation's burden of proof on its claims against other entities or individuals. See *Meadowood, Inc. v. Armstrong* (1990), 68 Ohio App.3d 439, 588 N.E.2d 968 (determining, in part, whether the actions of the trustees breached their fiduciary duty to a club). In our view, in order to enforce a condominium association rule or regulation against an owner, the burden is on Habitat to establish its claim.

{¶ 19} The third assignment of error is overruled.

{¶ 20} II. "The trial court erred in adopting the magistrate's decision and thereby refusing to award Habitat the full amount of its assessments, cost and attorneys fees and expenses, as required as a matter of law under the clear contractual terms of the declaration, by-laws, and rules and regulations of Habitat."

{¶ 21} In its second assignment of error, Habitat claims that the magistrate's ruling is erroneous, as a matter of law, because it does not comport with the terms of Habitat's declaration, bylaws, and rules and regulations. As stated above, the magistrate concluded that Habitat was not entitled to continually charge late fees for nonpayment of fines and that it was not entitled to the costs of preparing and filing a lien nor to attorney fees.

{¶ 22} Habitat argues that it was entitled to all of the assessed late fees, totaling $125, pursuant to article V, paragraph C of the declaration and the penalty provision of the rules and regulations. Article V provides:

{¶ 23} "A. General. Assessments for the maintenance and repair of the Common Areas and Facilities and for the insurance of the Condominium Property, together with the payment of the common expenses, shall be made in the manner provided herein, and in the manner provided in the By–Laws.

{¶ 24} " * * *

{¶ 25} "C. Late Charges. The Association may impose a charge against any Family Unit Owner who fails to pay any amount assessed by the Association against him or his Family Unit within twenty (20) days after the date of such assessment and who fails to exercise his rights under this Declaration or under the laws of the State of Ohio to contest such assessment in an amount of One Dollar ($1.00) per day for every day after the expiration of such twenty (20) day period."

{¶ 26} The other paragraphs of article V further address common expenses and profits. For example, paragraph B concerns the division of common profits and common expenses. Paragraph D provides that an owner cannot avoid common expenses by foregoing the use of common areas or abandoning his unit. Paragraph G concerns disputes about common expenses.

{¶ 27} Article IV, section 2 of the bylaws permits Habitat to adopt rules and regulations to supplement the regulations in the declaration and the bylaws "as it may deem advisable for the maintenance, use, conservation and beautification of the Condominium Property, and for the health, comfort, safety and general welfare of the owners and occupants of the Condominium Property. * * * In the event the original or the supplemental Rules and Regulations shall conflict with

any provision of the Declaration or of these By–Laws, the provisions of the Declaration and of these By–Laws shall govern."

{¶ 28} The penalties provision of the 2001 rules and regulations provides that to ensure compliance with the rules and regulations, "the Association may impose the following schedule of assessments for violation of any rules or regulations as listed below in or in the by-laws:

{¶ 29} "First offense: = Written notice (except Pets, Traffic Violations which are immediate)

{¶ 30} "Second offense: = $50.00 fine

{¶ 31} "Third offense: = $100.00 fine

{¶ 32} "Additional offenses: = $500.00 per offense with the possibility of Habitat taking the homeowner to Court seeking an injunction or other appropriate legal relief. All costs will be charged to the homeowner.

{¶ 33} "Non-payment of fines: = $25.00

{¶ 34} "At the discretion of the property manager, or in cases of serious violations, an immediate fine of $25.00–$100.00 per offense may be imposed.

{¶ 35} "All assessments will be incurred by the homeowner. In addition, for repeated violations of the by-laws and Rules & Regulations, additional penalties, up to and including eviction (if renter) or forced sale (if owner) are possible. The Association may choose to institute legal action at any time following written notice without first proceeding with the various lines of action. The homeowner will be assessed for all costs incurred by the Association to enforce the by-laws and Rules & Regulations."

{¶ 36} The 2002 version of the rules and regulations differs in one respect: that an immediate fine of $50 to $100 per offense may be imposed at the discretion of the property manager or in cases of serious violations.

{¶ 37} Upon review of the declaration, the bylaws and the rules and regulations in their entirety, we agree with the magistrate that there are no provisions that authorize Habitat to charge continual late fees for nonpayment of fines. The plain language of article V of the declaration refers to common assessments for the maintenance and repair of common areas and for insurance. See, also, R.C. 5311.08(B). Article V of the declaration does not address fines for violations of the rules and regulations found in the declaration and bylaws. Thus, although article V of the declaration allows Habitat to impose charges for an owner's failure to pay common assessments, article V, paragraph C is inapplicable to enforcement penalties. Likewise, none of the provisions in the bylaws indicates that late fees may continually be imposed for non-payment of fines.[2]

---

2. Articles IV and XII of the declaration and article IV of the bylaws also address Habitat's remedies for an owner's failure to comply with the provisions of the declaration and bylaws.

{¶ 38} Unlike the declaration and the bylaws, the rules and regulations clearly set forth a schedule of fines. However, they merely state that a $25 penalty may be imposed for nonpayment. Nothing in this provision suggests that this additional penalty may be re-imposed each month that the fine remains unpaid. Accordingly, the magistrate properly held that Habitat was not entitled to "continually charge late fees for nonpayment of fines."

■ {¶ 39} Next, Habitat asserts that it was entitled to all of the assessed shed door fines. Habitat states that Hagans was obligated under article II, paragraph 2 of the declaration to "maintain, repair and replace, at her expense" her family unit, including all doors. This requirement is incorporated into the maintenance-of-family-units provision of the by-laws. Habitat argues that under the penalties provision in the rules and regulations, it properly assessed fines of $50, $100, and $500 when Hagans repeatedly failed to replace her shed door. As stated above, the magistrate awarded $50 to Habitat for a shed-door fine.

{¶ 40} It is undisputed that Hagans's shed door sustained water damage and that Habitat concluded that it needed to be replaced. Although Habitat apparently sent Hagans several notices that the shed door was in violation of the terms of Habitat's governing documents, we find no basis for concluding that Hagans's failure to comply with the notices constituted additional offenses under Habitat's governing documents. The noncomplying shed door was a single violation, and Hagans's failure to replace the door in response to Habitat's repeated notices did not constitute additional offenses for which additional fines could be imposed. Rather, under article XII of the declaration and article IV of the bylaws, when Hagans failed to replace the door within a reasonable time, Habitat was entitled to enter Hagans's property, replace the breaching shed door, and assess the cost of that maintenance. The magistrate did not err when it failed to award $100 and $500 as shed-door fines.

{¶ 41} Habitat also claims that the trial court should have awarded $50 and $100 for noise violations. As stated above, the magistrate found that Habitat had not proven its noise-violation claims, and we cannot review the magistrate's factual findings in the absence of a transcript of the trial.

■ {¶ 42} Finally, Habitat asserts that it was entitled to recover its costs for filing a lien and its attorney fees. When considering an award of attorney fees, Ohio follows the "American Rule," under which a prevailing party may not generally recover attorney fees. *Wilson Concrete Prods., Inc. v. Baughman,* Montgomery App. No. 20069, 2004-Ohio-4696, 2004 WL 1950291, citing *Sorin v.*

---

None of these articles allows for the imposition of continual late fees for the nonpayment of fines.

*Bd. of Edn.* (1976), 46 Ohio St.2d 177, 179, 75 O.O.2d 224, 347 N.E.2d 527. Attorney fees may be awarded, however, if (1) a statute creates a duty, (2) an enforceable contract provision provides for an award of attorney fees, or (3) the losing party has acted in bad faith. *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 33–34, 514 N.E.2d 702. In *Nottingdale,* the Ohio Supreme Court held that "provisions contained within a declaration of condominium ownership and/or condominium by-laws requiring that a defaulting unit owner be responsible for the payment of attorney fees incurred by the unit owners' association in either a collection action or a foreclosure action against the defaulting unit owner for unpaid common assessments are enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." Id. at 37, 514 N.E.2d 702.

{¶ 43} In support of its assertion that it was entitled to recover the costs of filing a lien and its attorney fees, Habitat cites article V, paragraph E of the declaration; article V, section 9 of the by-laws; and the association-fees provision of the rules and regulations. Article V, paragraph E of the declaration states:

{¶ 44} "Lien of Association. The Association shall have a lien upon the estate or interest in any Family Unit of the owner thereof and upon his percentage of interest in the Common Areas and Facilities for the payment of the portion of the common expenses and late charges as described above chargeable against such Family Unit which remain unpaid for ten (10) days after the same have become due and payable from the time a certificate therefor, subscribed by the President of the Association, is filed with the Recorder of Montgomery County, Ohio, pursuant to authorization given by the Board of Managers of the Association. Such certificate shall contain a description of the Family Unit, the name or names of the record owner or owners thereof and the amount of such unpaid portion of the common expenses."

{¶ 45} Article V, section 9 of the bylaws sets forth the remedies for failure to pay assessments. It provides:

{¶ 46} "If an owner is in default in the payment of the aforesaid charges or assessments for thirty (30) days, the members of the Board of Managers may bring suit * * * to enforce collection thereof or to foreclose the lien therefor as provided in the Declaration; and there shall be added to the amount due the costs of said suit, together with legal interest, late charges as provided in the Declaration, and reasonable attorneys' fees to be fixed by the Court."

{¶ 47} The association-fees provision of the rules and regulations states that association fees and any special assessments that are in effect at that time are due on the first of each month and are deemed late if received after 4:00 p.m. on the 20th of the month. The provision further states that "[w]hen an account

reaches 60 days past due, a lien will be placed on the unit. All arrearages will be promptly turned over to Habitat's attorney. You will be assessed for all costs for attorneys fees, liens/foreclosures, and collection agency fees. The Association will utilize all methods available to collect money owed to it, including, but not limited to, placing liens on the unit, * * * filing a claim against the homeowner in small claims or municipal court, and/or foreclosure procedures."

{¶ 48} As quoted above, the penalty provision of the rules and regulations also provides that an owner will be assessed for "all costs" incurred by Habitat to enforce the bylaws and the rules and regulations.

{¶ 49} Here, Habitat filed a lien for an unpaid monthly assessment, various enforcement fines, and late charges for failure to pay the account balance. The magistrate found that Habitat was entitled to one month of condominium fees, although it apparently did not award a specific amount of damages for this claim. Under the terms of the declaration, the bylaws, and the rules and regulations, Habitat was entitled to obtain a lien for the nonpayment of condominium fees, to bring an action to collect that amount, and to be awarded the costs of the suit, including lien and attorney fees. The magistrate erred in failing to award those costs.

{¶ 50} As stated above, the declaration and the bylaws do not address fines for violations of the declarations, bylaws, and rules and regulations. Although the rules and regulations indicate that owners must pay "all costs" of enforcing the terms of the declaration, bylaws, and rules and regulations, the phrase "all costs" is insufficient to inform owners that they may be required to pay Habitat's attorney fees to collect enforcement fines. Accordingly, Habitat is not entitled to attorney fees related to these additional violations of its governing documents.

{¶ 51} The second assignment of error is sustained in part and overruled in part.

{¶ 52} The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings. The judgment is reversed to the extent that the magistrate failed to award the lien fee and certain attorney fees in accordance with this opinion. In all other respects, the judgment is affirmed.

Judgment accordingly.

BROGAN and FAIN, JJ., concur.

ANTHONY VALEN, J., retired, of the Twelfth Appellate District, sitting by assignment.