OPINION
{¶ 1} This matter is before the court on the Notices of Appeal of the Lyonhil Reserve Homeowners Association ("Association"), filed June 28, 2007, and January 31, 2008. The appeals were consolidated on February 15, 2008. The events giving rise to this matter began in February, 2001, when Fogel purchased Lot 7 in the Lyonhil Reserve Subdivision, in West Chester, Ohio. Todd Development Company, Inc. ("Todd") was the developer of the *Page 2 
subdivision. Fogel's property abutted a retention basin, which was partly on Fogel's lot and partly on other lots in the subdivision. When Fogel moved into her home, the retention basin was in good condition, free of debris and algae, and full of fish.
 {¶ 2} Over time, as other homes were constructed in the subdivision, the retention basin filled with silt, debris, and algae, and the fish died. Fogel was unable to enjoy her property due to the stench, and there were swarms of mosquitoes. Initially, three members of Todd had control of the Association. Fogel and other homeowners demanded that Todd dredge the retention basin, but nothing was done. In April, 2005, the three members of Todd relinquished control of the Association to the homeowners, who elected three trustees and a president. The Association failed to maintain the retention basin, and Fogel and others arranged to have the basin drained and dredged, but the company they hired did not complete the work. On November 1, 2005, Fogel filed a complaint against Todd and the Association, alleging negligence, private nuisance, breach of contract, and unjust enrichment. Fogel and Todd reached a settlement prior to trial, and Todd paid Fogel $20,000. On June 14, 2007, a jury determined that the Association was liable to Fogel for damages in the amount of $50,000, plus attorney fees of $23,436.57, through May 11, 2007. The jurors signed one verdict form that provides, "We, the Jury, * * * do hereby render a verdict in favor of the Plaintiff, Essy Fogel, * * * in the amount of $50,000.00." The jurors signed a second verdict form awarding attorney fees in the above stated amount.
 {¶ 3} On June 22, 2007, the Association filed a motion requesting that the settlement with Todd be set off against the award of fees. Fogel then filed a motion requesting the trial court to set off the settlement with Todd against Fogel's additional attorney fees and expert fees incurred after May 11, 2007. On August 29, 2007, Fogel filed a motion for continuing attorney fees, and she filed a memorandum in opposition to the Association's motion for setoff. Following a remand on November 15, 2007, by the Twelfth District Court of Appeals, *Page 3 
for a decision on the pending motions, on January 8, 2008, the trial court issued an "Entry Ordering the Todd Development Company Settlement be Applied to Past and Future Attorney Fees."
 {¶ 4} The Association appeals from the initial decision awarding Fogel attorney fees, and from the subsequent decision ordering that the Todd settlement be used as a setoff against past and future attorney fees.
 {¶ 5} At trial, Fogel identified certain exhibits relating to her legal expenses as follows without objection: (1) "the deposition bill for the reporter that took my deposition," (exhibit 23); (2) "the bill I had to book a flight back from Texas up to here for mediation because the first mediation someone's attorney didn't show up," (while this bill was admitted by the trial court as exhibit 24, it is not included in the record before us); (3) several invoices "from the first attorney that I hired to help get the pond dredged," (exhibit 25); and (4) "my legal expenses when I hired you to try to get this resolved" (exhibit 26). There was no expert testimony provided regarding the reasonableness of Fogel's attorney fees.
 {¶ 6} Attached to the exhibits herein is a note that appears to be from a juror that reads:
 {¶ 7} "What is the total she is asking in attorney fees — we need breakdown — Nov. 05 thru 6-14-7
 {¶ 8} "Also what is the expense $672.25 that she is asking for
 {¶ 9} "$21,000? was mentioned in Court but we do not have papers"
 {¶ 10} Also with the exhibits is a note that appears to be in response to the above jury question, which provides the following answer:
 {¶ 11} "Atty fees $23436.57 *Page 4 
 {¶ 12} "Oct 05 through May 11 07
 {¶ 13} "$21886.57 for law firm Sams, Fischer, Packard Schuesser
 {¶ 14} "$1550. Finney Stagnaro
 {¶ 15} "T23536.57
 {¶ 16} "The expense $672.25 was for plane and rental car for mediation."
 {¶ 17} There are two sets of initials on the bottom of this response. One appears to be "RSF," the same as trial counsel for Fogel, and the other appears to be "BMK," the same as trial counsel for the Association.
 {¶ 18} The Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Lyonhil Reserve Homeowners Association ("Declaration") provides as follows:
 {¶ 19} "5.5. Retention Basin Maintenance. The Association shall provide for all maintenance of the retention basin, including vegetation control and debris removal. In the event that any governmental agency having authority requires repair of the retention basin, then the Association shall promptly cause such repairs to be made.
 {¶ 20} "* * *
 {¶ 21} "7.4. Individual Assessment. The Association after approval by two-thirds (2/3) vote of all members of the Board shall have the right to assess an individual Lot for any of the following:
 {¶ 22} "* * *
 {¶ 23} "7.4.4. any costs associated with the enforcement of this Declaration or the Rules and Regulations of the Association, including, but not limited to, attorney's fees, witness fees and costs, and court costs.
 {¶ 24} "* * *
 {¶ 25} "9.4 Individual Actions. Each Owner is empowered to enforce the covenants by *Page 5 
appropriate legal proceedings or alternative dispute resolution methods."
 {¶ 26} The Association asserts one assignment of error as follows:
 {¶ 27} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PERMITTED PLAINTIFF-APPELLEE TO RECOVER ATTORNEY'S FEES."
 {¶ 28} According to the Association, Fogel is not entitled to attorney fees, there was no evidence that the fees awarded were reasonable and necessary, and the trial court was not permitted to award prospective attorney fees. Fogel asserts that plain error analysis applies since the Association waived its right to contest the attorney fee award by failing to object, that the Declaration supports the award of attorney fees, that the Association was guilty of bad faith, that the award was reasonable, that "the trial court's order setting off the settlement award against the award of attorney fees cured any defect, if any, in finding the attorney fees to be reasonable," and that "the award of additional attorney fees is just in light of the trial against appellant, post verdict motions and this appeal."
 {¶ 29} The Ohio Supreme Court has indicated that:
 {¶ 30} "`In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' Goldfuss v.Davidson, 79 Ohio St.3d 116, 1997-Ohio-401, 679 N.E.2d 1099, syllabus."Maier v. Shields, Miami App. No. 07-CA-21, 2008-Ohio-3874.
 {¶ 31} It is within the trial court's discretion to submit the issue of attorney fees to the jury for determination. Digital Analog DesignCorp. v. North Supply Co. (1992), 63 Ohio St. 3d 657. "When considering an award of attorney fees, Ohio follows the `American Rule,' *Page 6 
under which a prevailing party may not generally recover attorney fees. (Internal citation omitted.) Attorney fees may be awarded, however, if (1) a statute creates a duty, (2) an enforceable contract provision provides for an award of attorney fees, or (3) the losing party has acted in bad faith." Hagans v. Habitat Condominium Owners Assn,166 Ohio App. 3d 508, 2006-Ohio-1970.
 {¶ 32} "The award of attorney fees, although seemingly compensatory * * *, does not compensate the victim for damages flowing from the tort. Rather, the requirement that a party pay attorney fees * * * is a punitive (and thus equitable) remedy that flows from a jury finding of malice and the award of punitive damages. * * * Without a finding of malice and the award of punitive damages, plaintiff cannot justify the award of attorney fees, unless there is a basis for sanctions under Civ. R. 11." Digital Analog Design Corp. at 662.
 {¶ 33} "Punitive damages are awarded to punish the guilty party and deter tortious conduct by others." Id. at 660. "R.C. 2315.21, which governs the award of punitive damages in tort actions, provides in pertinent part that punitive damages may not be recovered from a defendant unless the evidence shows that `the actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.' R.C. 2315.21(C)(1). The burden of proof necessary to recover punitive damages is clear and convincing evidence." Anousheh v.Planet Ford Inc., Montgomery App. Nos. 21960, 21967, 2007-Ohio-4543.
 {¶ 34} When punitive damages are to be considered, the trial court instructs the jury in part as follows: "If you decide that the defendant is liable for punitive damages, you must also decide whether the defendant is liable for the attorney fees of counsel employed by the plaintiff in the prosecution of this action." 1 Ohio Jury Instructions 1993, Section 23.71(10).
 {¶ 35} The trial court herein instructed the jury as follows regarding attorney fees: *Page 7 
 {¶ 36} "* * * If you decide that the defendant is liable for damages, and take your pen and mark out the word punitive that doesn't belong there. If you decide that the defendant is liable for damages, you must also decide whether or not the defendant is liable for the attorney fees of counsel employed by the plaintiff in the prosecution of this action.
 {¶ 37} "* * *
 {¶ 38} "If you come back on the issue of `yes' on the verdict for the plaintiff, you will go to the second verdict for the plaintiff which is attorney fees. And it says: We, the jury, make an award to the plaintiff — and you put in their [sic] whatever dollar amount you find or none as attorney fees to be awarded against the defendant."
 {¶ 39} Having thoroughly reviewed the record, we conclude that plain error exists. Claims of nuisance, negligence and breach of contract were given to the jury, and none of these claims were a basis to award attorney fees. While the Declaration expressly provides that the Association may recover attorney fees from a homeowner under certain circumstances, it does not create a reciprocal right on the part of the homeowner; it merely provides that the homeowner is entitled to enforce the Declaration. Fogel did not allege the Association acted in bad faith nor did the jury make such a finding. The jury was instructed solely on the law of nuisance, negligence and breach of contract. The trial court further instructed that punitive damages were not at issue, and that the jury was permitted to award attorney fees based on the Association's liability for "damages." Absent a statutory duty, a contractual provision, or a finding of bad faith, Fogel was not entitled to an award of fees. International Lottery, Inc. v. Kerouac (1995),102 Ohio App.3d 660, 668-69 (holding trial court's award of attorney fees to plaintiff in violation of American Rule is plain error); Griffin v.Lamberjack (1994), 96 Ohio App.3d 257. The Association's sole assignment of error is sustained. The trial court's award of attorney fees to Fogel is vacated, as is that portion of its January 8, 2008 decision ordering that the Todd settlement "be utilized as a set off against *Page 8 
past and future attorney fees and expenses."
 {¶ 40} Judgment reversed and remanded for sole purpose of setting aside judgments on attorney fees.
WOLFF and BROGAN, JJ., concur.
Wolff, J., Brogan, J., and Donovan, J., of the Second District Court of Appeals, sitting by assignment of the Chief Justice of Ohio, pursuant to Section 5(A)(3) Article IV of the Ohio Constitution. *Page 1