[Cite as *Ihenacho v. Ohio Inst. of Photography & Technology*, 2012-Ohio-2797.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

CHARLES IHENACHO                               :

    Plaintiff-Appellant                        :            C.A. CASE NO.    24560

v.                                             :            T.C. NO.    09CV3316

OHIO INSTITUTE OF PHOTOGRAPHY                  :            (Civil appeal from
AND TECHNOLOGY                                                Common Pleas Court)

    Defendant-Appellee                        :

                                       :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the    22nd    day of    June   , 2012.

. . . . . . . . . .

CHARLES IHENACHO, 5310 Westbrook Road, Clayton, Ohio 45315
    Plaintiff-Appellant

RICHARD A. TALDA, Atty. Reg. No. 0023395 and SASHA ALEXA M. VANDEGRIFT,
Atty. Reg. No. 0080800, 33 W. First Street, Suite 600, Dayton, Ohio 45402
    Attorney for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the pro se Notice of Appeal of Charles Ihenacho, filed April 5, 2011. Ihenacho appeals from the March 9, 2011 decision of the trial court which awarded attorney fees and costs to the Ohio Institute of Photography & Technology ("OIPT"), where Ihenacho had been a student.

**{¶ 2}** On January 28, 2011 a hearing was held on OIPT's motion for attorney fees and costs. Ihenacho, who appeared pro se, moved the court to dismiss OIPT's motion on the basis that his appeal relating to the underlying judgment herein was pending in this Court. The trial court overruled Ihenacho's motion to dismiss at the hearing, determining that OIPT's right to seek attorney fees and costs was independent from the issues pending in Ihenacho's appeal.

**{¶ 3}** We initially note that Ihenacho's brief does not comply with the requirements of Rule 16 of the Ohio Rules of Appellate Procedure, which provides that an appellate brief must contain a statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected, as well as a statement of the issues presented for review. Instead, Ihenacho lists the following "reasons" that the trial court's decision is erroneous:

> (1) I was denied the right to present a witness.

> (2) I was denied the right for attorney to represent me on this trial.

(3) The trial was inconclusive because I did not cross examine the defendant on all her claims because the court denied my request for an attorney and to present witness.

(4) Defendant (OIP&T) claims for fees and cost were irregular, erroneous and bogus in nature.

(5) This is a civil case not criminal and I think by law I deserved the right for a free and faire (sic) trial without any bias or prejudice. Moreover, I did not sign any waiver of my right; therefore my right as a human being still exists.

(6) The CD/transcripts revealed that I requested the right to be represented by attorney and requested that the court allow me the opportunity to present my witness.

(7) Defendant attorneys invited me and my witness (Pastor Gary Trenium) in their office for intoragations (sic) for hours and hours but refused to present the deposition materials/interviews to the court for fairness trial.

**{¶ 4}** The transcript of the hearing reflects that, after the trial court overruled Ihenacho's motion to dismiss, counsel for OIPT, Richard Talda, testified on behalf of his client that the attorney fees sought by it were reasonable and necessary. According to Talda, he has previously provided expert testimony on the subject of reasonable attorney fees. He stated that he defended OIPT in the underlying lawsuit brought by Ihenacho. Talda testified that he also utilized associates and paralegals in his office to "handle the case, not only professionally and ably, but economically" for OIPT, since associates and

paralegals   are less expensive on an hourly basis.

{¶ 5}   Talda stated that the causes of action in   Ihenacho's pro se complaint included breach of contract, conversion, "some averments to discrimination," unjust enrichment and intentional infliction of emotional distress, and that Ihenacho initially sought $551,000.00 in damages.   Talda stated that Ihenacho later amended his complaint and added a claim for fraud, and his claim for damages then exceeded a million dollars.   Talda indicated that OIPT filed a counterclaim against Ihenacho.   Talda stated that efforts at settlement were unsuccessful.   He testified that Ihenchaco filed approximately 20 motions against OIPT, and that "we have an obligation to zealously represent clients and so we have to respond to them."

{¶ 6}   Talda testified that his firm pursued collection on behalf of OIPT by means of a "creditor's bill action," in an effort to reach the proceeds of a personal injury judgment in favor of Ihenchaco in federal court.   Talda stated that collection efforts remain ongoing.

{¶ 7}   Talda testified that he is the "billing attorney" for OIPT, and that as such, in the regular course of business, he reviewed every OIPT bill for accuracy and reasonableness, made discretionary adjustments, and finalized the bills.   Talda identified the final bills that were sent to OIPT in connection with Ihenacho.   Talda stated that his rate is $305.00 an hour, the rate for his associates is $190.00 an hour, and the rate for paralegals is $125.00 to $145.00 an hour.   Talda testified that those rates are typical for a firm of the size and reputation of his firm. Talda stated that the charges covered the defense of Ihenacho's claims, collection efforts, and appellate litigation.   Talda further identified a summary of the billing history prepared by the firm billing office, which showed how much was billed, how

much was received from OIPT, and adjustments to the bills made by Talda. He also identified a summary itemizing the costs and fees of the creditor's bill action and the appeal incurred to date. Talda stated that OIPT has paid all of its bills in full. OIPT requested an award of attorney fees in the amount of $62,691.60.

{¶ 8} At the conclusion of Talda's testimony, the trial court gave Ihencaho the opportunity to cross-examine Talda, and the following exchange occurred:

MR. IHENACHO: Your Honor, I really don't have any questions to ask him. But if you would want me to speak my mind - -

THE COURT: Hang on a second - -

MR. IHENACHO: - - freely, I would be glad to do that.

THE COURT: - - and I'll explain to you. Okay. He is a witness. Okay. And you have the right to cross-examine him on the motion that's pending. If you have questions, you're free to ask those.

If you don't have any questions or even if you do have questions, when you're finished, when Ms. Vandegrift is finished with her presentation of her case, you'll be permitted to call witnesses, including yourself, if you choose to do so, relating to the issues involving this motion. That's all we're hearing today. Okay? So you can ask him questions if you choose to.

MR. IHENACHO: Your Honor, I have - - I don't know what he's talking about, so, there's - - since I don't know what he's talking about I'm not going to ask him questions. I can't ask questions what I don't know about.

Thank you, your Honor.

{¶ 9} OIPT called no further witnesses and moved to admit its exhibits. When asked if he had any objection to the exhibits, Ihenacho responded, " * * * I'm not an attorney and * * * I don't know what the contents (sic) and what it is all about." The court responded, "If you remember though that we have talked several times in Court before that because you chose to represent yourself, you are held to the same standard as if you were an attorney. * * * [Y]ou're not excused simply because you're not an attorney. So if you have any objection to those exhibits then you're required to make that objection now." Ihenacho then repeated his argument that the hearing should not proceed during the pendency of his direct appeal. The exhibits were admitted, the court noting Ihenacho's objection to the court hearing the motion for attorney fees and costs had been previously overruled.

{¶ 10} When asked if he had any witnesses to present, Ihenacho responded, "I was not informed to present witness, * * *." In response to questions from the court, Ihenacho indicated that he received the notice regarding the hearing, and that he was aware that the hearing had been continued twice. The court advised Ihenacho, "because you chose to represent yourself, you're required to comply with all of the rules. That includes either subpoenaing or bringing witnesses." Ihenacho then asked for "just one favor," and the following exchange occurred:

THE COURT: I'm not in the position to give anybody favors. That's not my role, sir.

MR. IHENACHO: Okay. Your Honor, please, what I'm trying to say is that, I am from Africa from Nigeria.

THE COURT: I understand that, sir.

MR. IHENACHO: * * *  - - why I came here - -

* * *

MR. IHENACHO:   - - is because of the system of America that I read while I was working with communication (phonetic), and I begin to save my (indiscernable) money to come and see that country that was best for human dignity and human rights. * * * that's what brought me here.   And today - -

* * *

- - I'm seeing another side - -

THE COURT: Mr. Ihenacho, I - -

MR. IHENACHO:   - - of that - -

THE COURT:    - - disagree with you completely, sir.  We have - - absolutely have rules of procedure that apply to everyone.   You are not being denied any right whatsoever, sir.   What you're really asking, is you're asking for me to help you and I can't do that, because that's not my role, just as I can't help Mr. Talda and Ms. Vandegrift.

You were notified of this hearing and given an opportunity to present your witnesses, but because you've chosen to represent yourself, you're responsible for preparing and knowing what those rules are.

I'm going to ask you one more time, do you have any witnesses that you would like to present at this hearing?

MR. IHENACHO: I have witness that is not here right now, Your

Honor.

THE COURT: Did you subpoena that witness?

MR. IHEACHO:     I was not informed.

THE COURT: Mr. Ihenacho, as I said, I don't know who was to inform you, * * * you are required to inform yourself.  I am not required to inform you to bring witnesses as I wasn't * * *required, or even permitted to tell Ms. Vandegrift to bring witnesses.

{¶ 11}    The court then asked Ihenacho if he intended to testify on his own behalf, and Ihenacho asked the court to "please give me an opportunity to let me get an attorney, because this is beyond me now."    Ihenacho further stated, "I'm begging you in the name of God, if you can allow me to present - -to look for an attorney, because I cannot answer anything here because I don't understand it. * * * ."   After again noting that the hearing had been twice continued at Ihenacho's request, the court further noted that Ihenacho had "ample opportunity to bring your witnesses in and to have an attorney," and the court overruled Ihenacho's request and gave him an opportunity to testify, which Ihenacho declined.

{¶ 12} In its decision awarding fees, the trial court  noted that  OIPT's counterclaim was based upon an Educational Installment Contract ("EIC"), pursuant to which Ihenacho agreed to "pay us the fees for attorneys that are not our salaried employees plus court costs to collect any unpaid balance you owe us, to the extent permitted by law." The court further concluded that much of the service rendered by counsel for OIPT was related to defending the allegations in Ihenacho's complaint, which are not compensable pursuant to the terms of the EIC.  The court noted that OIPT obtained judgment against

Ihenacho on its contract claim, in the amount of $15,026.00, by means of default judgment, and that "the legal services for such action are rather limited in nature."

{¶ 13} The court found that the hourly rates charged as recited by Talda for his services, as well as those of his associates and paralegals, were reasonable for the Dayton area. The court noted that it was "virtually impossible to determine from the billing statement submitted by counsel the amount of expenses, particularly those incurred for research services through Lexis, which are attributable to Plaintiff's original Complaint and those matters that relate to Defendant's counterclaim." Accordingly, the court determined that it "can make no award relating to requested expenses, as Defendant has failed to prove by a preponderance of the evidence that those expenses are related to the collection of funds under the contract between the parties."

{¶ 14} Based upon the evidence presented, the court concluded that an award of attorney fees and costs in the amount of "$9,757.60 is reasonable and appropriate under the circumstances," based upon the "time associated with the collection of the debt, as permitted by the contract." The court noted that it excluded any requested fees "for matters associated with the defense of the Complaint filed by [Ihenacho] and other matters ancillary thereto, as well as any appeal relating to the Complaint." Finally, the court specifically itemized the charges related solely to the collection of funds owed to OIPT, in a three-page comprehensive list, as established by the unrefuted evidence, which totaled $9,757.60.

{¶ 15} We initially note, as the trial court repeatedly indicated to Ihenacho:

Litigants who choose to proceed pro se are presumed to know the law

and correct procedure, and are held to the same standard as other litigants.

See, e.g., *Kilroy v. B.H. Lakeshore Co.* (1996), 11 Ohio App.3d 357, 363, 676 N.E.2d 171. As the Eighth District Court of Appeals aptly noted in *Kilroy*, a pro se litigant "cannot expect or demand special treatment from the judge, who is to sit as an impartial arbiter." Id. *Yocum v. Means*, 2d Dist. Darke No. 1576, 2002-Ohio-3803, ¶ 20.

**{¶ 16}** We will address Ihenacho's assertions in the order best suited for analysis. Ihenacho asserts that the trial court wrongly denied his request for a continuance, and as we previously noted:

**{¶ 17}** "An appellate court must not reverse denial of a continuance unless an abuse of discretion has been demonstrated. * * *." *State v. Parks*, 69 Ohio App.3d 150, 154, 590 N.E.2d 300 (2d Dist. 1990). As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 18}** As this court noted in *Parks*:

In evaluating a motion for continuance, a court should note, *inter alia*: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. * * * . *Parks, Id.*

**{¶ 19}** Ihenacho sought a third continuance, at the conclusion of OIPT's evidence, to obtain counsel, and he argues herein that he has a "right to be represented by an attorney." However, the Ohio Supreme Court has determined that "'[t]there is no generalized right of counsel in civil litigation.'" *Holt v. Ken's Auto Sales, Inc.*, 2d Dist. Greene No. 2009 CA 17,2009-Ohio-6692, ¶ 35, quoting *State ex rel. Jenkins v. Stern*, 33 Ohio St.3d 108, 110, 515 N.E.2d 928 (1987). The Supreme Court further noted that:

"* * * [C]ertain distinctions can be made between the rights of civil litigants and those of criminal defendants. A criminal defendant's right to counsel arises out of the sixth amendment, and includes the right to appointed counsel when necessary. * * * A civil litigant's right to retain counsel is rooted in fifth amendment notions of due process; the right does not require the government to provide lawyers for litigants in civil matters. * * * A criminal defendant faced with a potential loss of his personal liberty has much

more at stake than a civil litigant asserting or contesting a claim for damages, and for this reason the law affords greater protection to the criminal defendant's rights." *Id*. (Citations omitted.)

Intermediate appellate courts, including our own, have followed these principles, and have found no constitutional right to representation in cases involving individual civil litigants. * * * . *Cincinnati Ins. Co. v. Schaub*, 2d Dist. Montgomery No. 22419, 2008-Ohio-4729, ¶ 19-20.

Ihenacho had no right to appointed counsel, and he failed to exercise his right to retain counsel but instead chose to proceed pro se, and the trial court did not abuse its discretion in refusing to continue the hearing for a third time, correctly concluding that Ihenacho had ample time to seek representation.

{¶ 20} To the extent that Ihenacho suggests that he was denied a fair trial, due to alleged "bias or prejudice," the record makes clear that he requested "a favor," or preferential treatment, from the trial court and that the court correctly held him to the same standard as other litigants. Further, the court thoroughly considered his motion to dismiss, he had the opportunity to cross-examine Talda, object to OIPT's exhibits, present witnesses and provide testimony, and Ihenacho has accordingly failed to demonstrate prejudice. Finally, we note that Ihenacho did not file an affidavit alleging bias or prejudice as required by R.C. 2701.03.

{¶ 21} Regarding Ihenacho's assertion that OIPT's claims for fees were "irregular, erroneous and bogus in nature," we note that "Ohio follows the 'American Rule,' under which a prevailing party may not generally recover attorney fees. * * * Attorney fees may be

awarded, however, if (1) a statute creates a duty, (2) an enforceable contract provision provides for an award of attorney fees, or (3) the losing party acted in bad faith." *Hagans v. Habitat Condominium Owners Assn.*, 166 Ohio App.3d 508, 2006-Ohio-1970, 851 N.E.2d 544 (2d Dist.), citing *Nottingdale Homeowner's Assn., Inc. V. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987). A trial court must consider the following in awarding attorney fees: "'(1) the time and labor involved in maintaining the litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of the litigation.' * * *. " *Leal v. Holtvogt*, 123 Ohio App.3d  51, 73, 702 N.E.2d 1246 (2d Dist. 1998). Also, "there must be evidence presented regarding the reasonableness of attorney fees before the trial court can make such an award." *Id.*

**{¶ 22}** The trial court correctly awarded fees based upon the contract between the parties. It further noted that OIPT obtained the underlying judgment against Ihenacho by means of default, which required limited services. The court determined that OIPT failed to establish that its fees for Lexis research were compensable pursuant to the contract. Finally, the court found that the rates charged for the services of Talda, his associates and paralegals were reasonable for the area. The court specifically enumerated the attorney fees and costs it found compensable pursuant to the contract, as established by the unrefuted evidence.

**{¶ 23}** Finally, regarding Ihenacho's assertion that the trial court erred in rendering judgment against him when OIPT "refused" to present certain deposition testimony, we agree with OIPT that Ihenacho took no steps to present the deposition testimony himself (and he does not assert that the trial court denied him the opportunity to present it), and the

issue is accordingly waived.

{¶ 24} There being no merit to Ihenacho's assertions, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Charles Ihenacho
Richard A. Talda
Sasha Alexa M. VanDeGrift
Hon. Mary Katherine Huffman