[Cite as *Classic Comfort Heating & Supply, L.L.C. v. Miller*, 2022-Ohio-855.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## DARKE COUNTY

| | | |
|---|---|---|
| CLASSIC COMFORT HEATING & SUPPLY, LLC | : | |
| | : | |
| | : | Appellate Case Nos. 2021-CA-11 and |
| Plaintiff-Appellant | : | 2021-CA-12 |
| | : | |
| v. | : | Trial Court Case No. 20-CV-200 |
| | : | |
| SANDRA K. MILLER | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of March, 2022.

. . . . . . . . . . .

JODY M. OSTER, Atty. Reg. No. 0041391, 1391 West Fifth Avenue, Suite 433, Columbus, Ohio 43212
        Attorney for Plaintiff-Appellant

RANDALL E. BREADEN, Atty. Reg. No. 0011453, 414 Walnut Street, Greenville, Ohio 45331
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

DONOVAN, J.

        **{¶ 1}** Classic Comfort Heating and Supply, LLC ("Classic Comfort"), appeals from two trial court judgments related to a dispute over payment for the purchase of a heating

system. Initially, the trial court found that Sandra K. Miller owed Classic Comfort a balance of $20,595.57 in payment for the heating system, plus three percent interest from the date of the judgment. Classic Comfort subsequently filed motions for prejudgment interest and attorney fees and expenses, both of which were denied. Classic Comfort appeals from the denial of these motions. Finding merit in Classic Comfort's arguments, we reverse and remand.

{¶ 2} On April 29, 2020, Classic Comfort filed a complaint against Miller alleging breach of contract, unjust enrichment, and fraudulent inducement; the complaint sought $20,495.57 as of April 17, 2020, along with prejudgment and post-judgment interest, costs, the expenses of litigation, and attorney's fees. Miller and her boyfriend, Brian K. Bates, had constructed a residence at 8183 U.S. Route 127 in Greenville, Ohio, during 2018 and 2019. The complaint asserted that Miller and Bates had acted as general contractors and entered into contracts for work to be performed by others in connection with the construction.

{¶ 3} According to Classic Comfort, in March 2019, Miller and Bates visited Classic Comfort's business location to discuss the installation of a radiant heating system for the residence and request an estimate. The initial estimate provided was $25,000. Classic Comfort alleged in its complaint that Miller and Bates had contracted with it to install the radiant heating system and had agreed that Classic Comfort would be paid all amounts required to complete installation of the system, as work was completed, and that they would also pay the costs of any additions or changes made to the original scope of the work. According to the complaint, Miller and Bates "added components, upgraded equipment and engaged [Classic Comfort] for installation and design services, which

were not contemplated by the original estimate."

{¶ 4} In the summer of 2019, Classic Comfort completed the first phase of the overall project, installing piping in the flooring for the residence. Classic Comfort submitted an invoice dated July 24, 2019, in the amount of $11,013.27, and Miller paid the invoice by check.

{¶ 5} In the fall of 2019, Bates contacted Classic Comfort and requested additional work to complete the installation. Classic Comfort alleged that it worked on the installation in October and November 2019 and submitted invoices dated October 9 and November 7, 2019, totaling $14,880.94. Upon completion of the work, Classic Comfort submitted a final invoice, dated November 24, 2019, in the amount of $5,614.63. Copies of the invoices were attached to the complaint, along with a copy Miller's check in payment of the July 2019 invoice.

{¶ 6} On March 18, 2020, a representative of Classic Comfort met with Bates at the property to discuss payment of the outstanding invoices; at the time, Bates and Miller were living in the residence, which was substantially complete. Classic Comfort alleged that, at this meeting, Bates failed to disclose that he had filed for relief under Chapter 7 of the Unites States Bankruptcy Code on December 31, 2019; instead, he assured Classic Comfort that payment would be made in two to three days. Two weeks after the meeting, Classic Comfort received notice of Bates's bankruptcy petition and a demand that it "cease all demands for payment from Bates"; Classic Comfort complied. However, Classic Comfort pursued payment from Miller in its complaint

{¶ 7} On June 8, 2020, Miller answered the complaint and asserted counterclaims for breach of contract, fraudulent misrepresentation, and violation of Ohio's Consumer

Sales Practices Act (CSPA). In her breach of contract claim, Miller asserted she had budgeted $25,000 for the purchase and installation of a radiant heating system, and she had informed Classic Comfort employee David Kruckeberg of this fact. Kruckeberg showed Miller and Bates several systems and then recommended a certain radiant heating system to them. According to Miller, Kruckeberg represented that $25,000 was "the maximum out-of-pocket cost when completed," but there was no written estimate for the entire project or the component parts (e.g., the radiant heater unit, other material costs, labor, or sales tax). Miller asserted that she agreed to pay $25,000 "for the purchase and installation of the radiant heating system previously recommended by [Classic Comfort]."

{¶ 8} Miller further asserted that in the summer of 2019, Classic Comfort installed pipe in the flooring area, which was to be encased in a concrete slab, in the first phase of installation. According to Miller, some additional necessary materials and labor for this phase of the project were paid for by her separately, and she was not reimbursed by Classic Comfort.

{¶ 9} Regarding her claim for fraudulent inducement, Miller asserted that, when she "entered into a contract with" Classic Comfort for the "purchase and full installation" of the heating system, Classic Comfort represented that it had the ability to complete all aspects of the project, when it "clearly did not have the ability to complete the contract for the agreed upon contract price" of $25,000. She asserted that Classic Comfort had known its representations were false or made them "with utter disregard or recklessness regarding whether or not said representations and/or omissions were false."

{¶ 10} Regarding the alleged CSPA violations, Miller claimed that Classic

Comfort's agreement to a price of $25,000, but its subsequently billing her for $31,508.84, "constituted an unfair or deceptive act or practice" and/or an unconscionable act in connection with a consumer transaction.

{¶ 11} On July 6, 2020, Classic Comfort filed a reply to the counterclaim. On October 13, 2020, Classic Comfort filed a motion to compel Miller's responses to its July 9, 2020 first request for production of documents and interrogatories. On October 28, 2020, Miller filed a "Certificate of Compliance." In December 2020, Classic Comfort filed an amended motion to compel Miller's responses to the July 9, 2020 discovery request and asked that Miller be ordered to pay its attorney's fees and expenses for pursuing Miller's compliance with the discovery request. The amended motion asserted that Miller had not complied with the discovery request, notwithstanding her filing of a certificate of compliance, and that she had "done nothing but continue to frustrate the discovery process."

{¶ 12} On January 11, 2021, the court filed an order stating that it had held a conference call with counsel and had "admonished" Miller to promptly comply with discovery requests.

{¶ 13} On January 22, 2021, Classic Comfort filed a notice that Miller had not complied with the court's January 11 order; although she had supplemented her responses to certain interrogatories, deficiencies remained. Classic Comfort asserted that, pursuant to Civ.R. 34(B), Miller had failed to: provide written responses to Classic Comfort's first request for production of documents; organize and label documents to correspond to Classic Comfort's first request for production of documents; produce her federal and state income tax returns for 2019 and 2020; and produce monthly account

statements for her Fidelity Investment account. Finally, Classic Comfort argued that Miller had agreed at her January 8, 2021 deposition to produce "all records and documents reflecting the cost and expense to construct the barn and residence" in Greenville, after testifying she could not recall the total cost, but she had not produced the documents. In response, Miller filed a certificate of compliance with the court's January 11, 2021 discovery order. She asserted that Classic Comfort mischaracterized her discovery responses and that its allegations of noncompliance were "patently false" and "disingenuous."

{¶ 14} On May 28, 2021, Classic Comfort filed a motion for summary judgment on its breach of contract and unjust enrichment claims and on Miller's counterclaims; it supplemented the motion the following month. Classic Comfort's argument in support of summary judgment was that the issues pertinent to the case had been litigated in Bates's U.S. Bankruptcy Court case, which described Bates as a "counter-party to the contract" with Classic Comfort, and that the judgment against Bates was therefore enforceable against Miller "based upon the principles of res judicata." Miller opposed Classic Comfort's motion for summary judgment.

{¶ 15} On August 6, 2021, the trial court denied the motion for summary judgment.[1] The court rejected Classic Comfort's argument that the "same issues" had been litigated in the bankruptcy court against Bates and that the judgment against Bates was enforceable against Miller. The court determined that "the principles of *res judicata* cannot be used against the non-participating party." The court further concluded that, in

---

[1] The trial court's judgment was captioned as a decision on "cross-motions for summary judgment," but Miller did not file a motion for summary judgment.

the absence of a principal-agent relationship between Bates and Miller, Classic Comfort could not use agency principles to prevent Miller from defending the claims against her. The court concluded that there was a genuine issue of material fact regarding the nature of the relationship between Miller and Bates such that summary judgment in favor of Classic Comforts against Miller was not appropriate. The court also found that there were genuine issues of material fact as to whether both Bates and Miller were parties to the contract, whether Miller was liable on the contract, as to the intentions of the parties, and as to reasonable reliance. Finally, with respect to fraudulent inducement, the court concluded that the parties' intents would have to be determined based on evidence presented at trial.

{¶ 16} A bench trial was held on August 24, 2021, and the court issued its judgment on August 30, 2021. With respect to the existence of a binding contract, the court found that Miller generally had not been integrally involved in discussions or transactions with Classic Comfort, but that she was liable under the contract because: "(1) she received the benefit of the materials and equipment, (2) she testified that she expected to pay for the heating system as the owner of the premises, (3) she made partial payments for materials, and (4) [Bates] testified that he did not expect to be liable since he was already planning his bankruptcy filing" when the contract was entered. The court further found there had not been a binding contract for Classic Comfort "to provide an installed, fully operational heating system" to Miller and Bates for $25,000, because the agreement did not list labor charges and additional quotes were requested by Bates for certain parts of the contract. The court found that other "missing details reasonably expected to be included in a binding contract include (1) terms of payment of sales tax,

(2) the duration that the quotation would remain open, (3) the amount, necessity and timing of any down-payment, and (4) whether [Miller] would receive any credit for labor provided by [Bates]." In sum, the court concluded that the agreement lacked the specificity needed to conclude that there had been a binding agreement to provide and install the heating system for a set price.

{¶ 17} The court further found no CSPA violation, because there did not appear to have been "any unconscionable conduct in the several independent transactions" between the parties.

{¶ 18} The court noted that there were several issues that were "not outcome determinative, but deserve some comment." Specifically, 1) Miller lacked experience with construction and was only secondarily involved in the details of the project, but should have taken an active role due to her financial obligation for the project; 2) Miller's reliance on Bates had been misplaced because, while he had construction experience, he lacked experience in the field of HVAC services, and "this deficiency led to compounding errors"; and 3) Bates should have known of the need for precise details before an enforceable contract could be established, and he should have "recognized this furnace project as a time and materials arrangement which did not have a minimum price."

{¶ 19} The court also noted that some of Classic Comfort's business practices had contributed to the misunderstandings and errors between the parties: 1) it would have been prudent for Classic Comfort to explain that there were extra charges for labor, taxes, delivery and other necessary materials; and 2) presenting a final bill more than 120 days after delivery of materials and components was "a recipe for litigation, especially when no down-payment ha[d] been received." The court made these observations based on its

conclusion that "the problems between these parties [were] common, preventable errors."

{¶ 20} In sum, the court ruled that the parties had entered into "a series of independent financial transactions" whereby Bates ordered a component or materials and Classic Comfort agreed to provide the item(s). "Only on a transaction by transaction basis [was] there enough clarity to determine what was intended to be purchased and what was to be delivered," and payment is legally presumed to be due for the reasonable value of the items and services provided. Therefore, the court found "no legal defense" to non-payment by Miller. It granted judgment in favor of Classic Comfort in the amount of $20,595.57, plus interest "at the statutory rate of 3% per annum from date of judgment." Costs were equally divided.

{¶ 21} On August 31, 2021, Classic Comfort filed a motion for prejudgment interest at the rate of 3% per annum from March 18, 2020 through the date of judgment, pursuant to R.C. 1343.03(A)(1). Classic Comfort argued that this Court has held that a trial court "has no discretion to deny prejudgment interest on a contractual claim on an account," citing *Miami Valley Hosp. v. Edwards,* 2d Dist. Darke No. 07-CA-1717, 2008-Ohio-2721. Classic Comfort asserted that it should be compensated for the lapse of time between the accrual of the claim and the judgment, in addition to the post-judgment interest awarded by the trial court, especially since Miller admitted that she had been presented with the final invoices on March 18, 2020.

{¶ 22} On September 13, 2021, Classic Comfort filed a motion for attorney fees, costs, and expenses, based on Miller's and her counsel's "frivolous and unwarranted conduct." Specifically, Classic Comfort asserted that Miller and her counsel had "concocted frivolous counterclaims and defenses based on non-existent facts and legal

theories," and that they had "maintained these claims throughout the litigation" in an attempt to avoid payment of a legitimate debt, thereby causing Classic Comfort to incur fees, costs, and expenses in defending the unsubstantiated claims.

{¶ 23} With regard to the breach of contract claim, Classic Comfort argued that Miller had initially disputed that a contract existed on the terms alleged by Classic Comfort and instead argued that "some completely different contract existed," which Classic Comfort had breached. But Miller later admitted at her deposition and at trial that "there was no such conversation as she specifically alleged," and that Bates, who had all of the conversations with Classic Comfort to order labor and materials, had admitted that there was no contract price of $25,000. Classic Comfort argued that Miller had even admitted that she had not known what was discussed between Bates and Classic Comfort, "yet that did not stop her from making false allegations about what occurred." Classic Comfort argued that Miller and defense counsel "knew before trial that her claims were lacking in factual and legal support," but they pursued them to trial anyway without regard for the substantial fees and expenses that these actions caused Classic Comfort to incur.

{¶ 24} With respect to the fraudulent inducement claim, Classic Comfort asserted that Miller's claim was also frivolous; Miller's assertion that the invoices were more than what was owed under the $25,000 "contract" that she claimed existed "was legally deficient from the start," and a reasonable attorney would have abandoned these claims before trial.

{¶ 25} Regarding Miller's claim under the CSPA, Classic Comfort asserted that "there was no viable legal theory, let alone any evidence to support" her claim. Classic Comfort asserted that Miller admitted that the conduct she complained about "did not fit

into any of the specific subsections (1) through (10) of [R.C. 1345.02(B)] or the Ohio Administrative Code." Classic Comfort argued that the Revised Code and Ohio courts considering a similar argument "require a price change to be substantial to be actionable under the CSPA."

{¶ 26} Finally, Classic Comfort asserted that Miller acted in bad faith in pursuing her CSPA claim. After first arguing that the increase above the $25,000 price violated the CSPA, Miller later asserted for the first time that the lack of a prior written estimate by Classic Comfort had also been deceptive and unconscionable, without identifying any authority to support her position. According to Classic Comfort, Miller acted in bad faith in bringing her CSPA claim, which warranted an award under R.C. 1345.09(F)(1). Classic Comfort asserted that, when asked why she only pursued her claim against Classic Comfort, and not any of the other contractors, Miller responded that "she did not 'trust' [Classic Comfort], as if that somehow made [Classic Comfort's] conduct deceptive or unconscionable under the law." Classic Comfort asserted that no reasonable attorney would have made such ridiculous arguments after Miller had admitted that Bates had acted on her behalf and that she had paid all of the invoices of other contractors and suppliers that were made out to Bates or Bates Construction.

{¶ 27} Classic Comfort asserted that an exception to the general rule that a prevailing party may not recover attorney fees is present here since Miller and defense counsel acted in bad faith. Classic Comfort asserted that Miller was untruthful about the facts underlying her counterclaim. Classic Comfort requested attorney's fees, costs, and expenses in the amount of $53,330.59.

{¶ 28} Along with its motion for attorney fees, Classic Comfort filed: Miller's

supplemental answers to interrogatories 4, 5, and 11 (Exhibit A); excerpts from Miller's and Bates's depositions and three exhibits from Miller's deposition (Exhibit B); an affidavit from Classic Comfort's attorney (Exhibit C); and various invoices. Exhibit C-1 included several invoices: Invoice #2643, reflecting services billed from April 3 through October 31, 2020, with an amount due of $7,869.54 after $5,000.00 was applied from the trust account; Invoice #2667, reflecting services from November 6 through December 31, 2020, in the amount of $4,204.75; Invoice #2677, reflecting services from January 4 through February 28, 2021, in the amount of $8,306.70; and Invoice #2697, reflecting services from March 10 through May 31, 2021, in the amount of $6,688.55. Exhibit C (Part II) contained Invoice #2710, reflecting services from June 1 through August 31, 2021, in the amount of $21,261.05.

{¶ 29} On September 14, 2021, the trial court denied Classic Comfort's motion for prejudgment interest. The court found that, in reaching its decision on the merits of Classic Comfort's claims, it had considered many pretrial issues and disputed facts, and it had denied Classic Comfort's motion for summary judgment; the court noted that it had only been able to resolve the issues of who was responsible for the debt, the amount due, and any set-offs after hearing testimony from numerous witnesses and considering many exhibits. Noting that it had "found merits in both parties' claims and defenses" before entering judgment in favor of Classic Comfort and that the amount owed had not been established until August 30, 2021, the trial court found that an award of prejudgment interest was not required.

{¶ 30} On September 29, 2021, the court overruled Classic Comfort's motion for attorney fees, costs, and expenses without an evidentiary hearing. The court found that

no hearing was necessary because the court had been involved in the various pretrial motions and had conducted a bench trial. The court rejected Classic Comfort's argument that Miller had not had "a factual and/or legal basis to pursue her claims," although she had not prevailed on her claims. The court further found that Classic Comfort's argument for attorney fees and expenses ignored the "factual deficiencies" in its own conduct "that contributed to the misunderstood relationship between the parties." The court noted that it had articulated these deficiencies in a prior judgment, and it reiterated that Classic Comfort had "conducted all portions of the business transactions with a third-party and then delivered a final billing to [Miller] only after a significant delay in time after all parts were delivered." The court concluded that an award of attorney fees was not warranted, notwithstanding the judgment on the merits in favor of Classic Comfort.

{¶ 31} Classic Comfort appeals from the trial court's judgments on its motions for prejudgment interest and attorney fees, costs, and expenses, asserting four assignments of error. We will consider its first and second assignments of error together.

THE TRIAL COURT ERRED WHEN IT DETERMINED AN AWARD OF PREJUDGMENT INTEREST UNDER R.C. 1343.03(a)(1) IS NOT MANDATORY WHEN JUDGMENT IS RENDERED ON A CONTRACT CLAIM.

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THE DEBT OWED TO [CLASSIC COMFORT] BECAME DUE AND PAYABLE AND THE CLAIM ACCRUED ON THE DATE OF THE JUDGMENT FOR PURPOSES OF AWARDING PREJUDGMENT

INTEREST.

{¶ 32} In its first assignment of error, Classic Comfort asserts that a trial court has no discretion to deny prejudgment interest on a contractual claim on an account; rather, it is obligated to make such an award. It argues that the trial court "ignored the plain language" of R.C. 1343.03(A) and well-settled Ohio law, which requires an award of prejudgment interest. Classic Comfort asserts that its final invoices were due and payable when presented to Miller for payment on March 18, 2020, and under Ohio law, that was when Classic Comfort's claim accrued for purposes of the award of prejudgment interest under R.C. 1343.03(A). Miller agrees with Classic Comfort's argument that the trial court was required to award prejudgment interest as a matter of law.

{¶ 33} In its second assignment of error, Classic Comfort argues that prejudgment interest accrues from the time the money due to a plaintiff should have been paid and that, although a trial court must determine that accrual date on a case-by-case basis, the trial court's discretion to do so is "not limitless." It cites *Royal Electric Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 652 N.E.2d 687 (1995), and *Jeffrey B. Peterson & Assocs. v. Dayton Metro Hous. Auth.,* 2d Dist. Montgomery No. 17306, 2000 WL 1006562, *21 (July 21, 2000). In response, Miller asserts that when a contract claim is due determines the date from which prejudgment interest runs, but she notes that the trial court's judgment did not establish the accrual date for any prejudgment interest to commence. She recognizes that this was an abuse of discretion and suggests that the case should be remanded to the Trial Court to determine the commencement date prejudgment interest. In reply, Classic Comfort asserts that remanding the case for the trial court to make an award of prejudgment interest would be "another needless waste

of time and money" when this Court has the authority to make such an award and could "end the controversy without further expense" by doing so.

{¶ 34} R.C. 1343.03(A) states:

> In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶ 35} With respect to prejudgment interest, this Court has observed:

> The Ohio Supreme Court has stated that "the award of prejudgment interest is compensation to the plaintiff for the period of time between the accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 117. In determining whether to award prejudgment interest pursuant to R.C. 1343.03(A), a court must consider whether the aggrieved party has

been fully compensated. *Id.* at 116. If the plaintiff has been otherwise fully compensated, then an award of prejudgment interest may not be indicated. *Wasserman v. The Home Corp.,* Cuyahoga App. No. 90915, 2008-Ohio-5477, ¶ 5-9. A trial court's determination whether to award prejudgment interest is subject to an abuse of discretion standard of review. *Damario v. Shimmel,* Cuyahoga App. Nos. 90760, 90875, 2008-Ohio-5582, ¶ 55.

*Lynda Hughes Dawson Lumber, Inc. v. Hummel,* 2d Dist. Darke No. 09-CA-07, 2010-Ohio-4918, ¶ 16.

{¶ 36} An abuse of discretion means "an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.* *See also Brown v. Burnett*, 2020-Ohio-297, 144 N.E.3d 475, ¶ 21 (2d Dist.).

{¶ 37} In *Miami Valley Hosp. v. Edwards*, 2d Dist. Darke No. 07-CA-1717, 2008-Ohio-2721, the hospital received a default judgment of over $9,000, and the trial court awarded interest at the statutory rate from the date of judgment, without a hearing. *Id.* at ¶ 4. We determined that the trial court had erred in refusing to award prejudgment

interest to the hospital and remanded the matter for the trial court to determine when Miami Valley's account became due and payable and the rate of interest that should apply. *Id.* at ¶ 2.

**{¶ 38}** On appeal, this Court noted:

Various Ohio courts have held that "[o]nce a plaintiff receives judgment on a contract claim, the trial court has no discretion but to award prejudgment interest under R.C. 1343.03(A). * * * The only issue for resolution by a trial court with respect to prejudgment interest under R.C. 1343.03(A) is how much interest is due." *Parrish v. Coles,* Franklin App. Nos. 06-AP-696 and 06AP-620, 2007-Ohio-3229, at ¶ 68 (Citations omitted.) Accord *Slack v. Cropper,* 143 Ohio App.3d 74, 85, 2001-Ohio-8894, 757 N.E.2d 404, and *Lehrner v. Safeco Ins./Am. States Ins. Co.,* 171 Ohio App.3d 570, 592, 2007-Ohio-795, 872 N.E.2d 295, 312, at ¶ 71-76. In addition, we have observed that:

"The test for whether prejudgment interest is properly awarded is whether the aggrieved party has been fully compensated. * * * ' "[P]rejudgment interest does not punish the party responsible for the underlying damages * * *, but, rather acts as compensation and serves ultimately to make the aggrieved party whole. Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment." ' " *Johnson v. Kappeler* (Dec. 28, 2001), Miami App. No. 01-CA-26, 2001 WL 1658178, * 7 (Citations omitted.)

*Edwards* at ¶ 13-14.

**{¶ 39}** Further, we concluded:

* * * [T]he trial court erred because it was required to award prejudgment interest as a matter of law under R.C. 1343.03(A). The trial court did not have discretion to refuse to award prejudgment interest on Miami Valley's contractual claim. The court did have discretion to decide when Miami Valley's account became due and payable and the legal rate of interest that should apply—and the court should have made findings in that regard.

*Id.* at ¶ 17.

**{¶ 40}** In *Jeffrey B. Peterson & Assocs.,* 2d Dist. Montgomery No. 17306, 2000 WL 1006562, *21, we observed that the trial court had appeared to comply with *Royal Electric*:

* * * Specifically, the court denied prejudgment interest because it found that Peterson would "be made whole" by the damages award. However, this conclusion ignores the meaning of the Supreme Court's comments in *Royal Electric.* For example, after rejecting the traditional liquidated/unliquidated dichotomy, the Ohio Supreme Court went on to stress that:

An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages * * * but rather acts as compensation

and ultimately serves to make the aggrieved party whole. * * * *Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment.*

*Id.* (Emphasis added).

Consequently, the inquiry set out in *Royal Electric* was akin to a rhetorical question, which is answered affirmatively only if a party has been awarded pre-judgment interest according to statute. *Dwyer Electric, Inc. v. Confederated Builders, Inc.* (Oct. 29, 1998), Crawford App. No. 3-98-18, unreported, p. 3. In other words, the question, "has the aggrieved party been made whole?" can only be answered affirmatively if there has been compliance with R.C. 1343.03(A). *Id.*

{¶ 41} It is undisputed that Classic Comfort presented the final invoices to Miller, dated October 9, November 7, and November 24, 2019, totaling $20,495.47, prior to the court's August 30, 2021 judgment. We agree with Classic Comfort (and Miller) that the invoices were due and payable when presented, and that the trial court abused its discretion in failing to determine the date on which prejudgment interest should commence. Classic Comfort's first two assignments of errors are sustained.

{¶ 42} We will next consider Classic Comfort's third and fourth assignments of error together:

THE TRIAL COURT ERRED WHEN IT FOCUSED ON IRRELEVANT EVIDENCE AND ISSUES TO DECIDE [CLASSIC COMFORT'S] REQUEST FOR AN AWARD OF ATTORNEY FEES.

THE TRIAL COURT ERRED IN DENYING [CLASSIC COMFORT'S] REQUEST FOR AN AWARD OF ATTORNEY FEES WITHOUT CONDUCTING AN EVIDENTIARY HEARING.

{¶ 43} In its third assignment of error, Classic Comfort argues that its business practices in dealing with Miller, which occurred prior to the litigation, were irrelevant in deciding whether it was entitled to an award of attorney fees under either R.C. 2323.51(B)(1) or R.C. 1345.09(F)(1). Classic Comfort asserts that, pursuant to R.C. 2323.51(A)(2)(a)(i)-(v), the focus should have been on the conduct and actions of Miller and her counsel during the litigation, for which fees were sought, including the tactics they employed during the case and whether the claims and defenses raised had legal and factual support. Classic Comfort contends that whether it delivered invoices late or conducted business through Bates was immaterial to this determination. Classic Comfort also argues that an objective standard is to be applied in determining whether frivolous conduct occurred, but the trial court did not apply this standard.

{¶ 44} In its fourth assignment of error, Classic Comfort asserts that "each of Miller's defenses and counterclaims lacked evidentiary and legal support" and that they raised arguments that "were specious and contradictory." Classic Comfort asserts that Miller "fabricated the facts" to support her breach of contract claim, noting that the trial court "even expressly noted" in its August 30, 2021 judgment that there was no evidence of a contract for fixed price of $25,000, as Miller had claimed.

{¶ 45} Classic Comfort also asserts that Miller admitted at trial that "the key elements required to support the existence of her fabricated contract were non-existent," namely that there had been no discussion or certainty regarding the start or completion

time for installation and no specificity about what exactly was included in the alleged contract. But these facts did not stop Miller and defense counsel from pursuing her breach of contract counterclaim to trial. Classic Comfort also points out that Bates, the person who had the substantive conversations with Classic Comfort, admitted that there was no contract at $25,000, and thus did not substantiate Miller's claims. Classic Comfort points out that Miller continued to argue that Classic Comfort had failed to provide wire mesh and plumbing services even after she admitted that she had had no conversations with Classic Comfort about what it was to provide generally or about the wire mesh or plumbing work specifically, and Bates testified that neither the wire mesh nor the plumbing work was to be provided by Classic Comfort.

{¶ 46} According to Classic Comfort, Miller also failed to produce any evidence that Classic Comfort made any false statements to her, intended to defraud her, or did not intend to fulfill its obligations, all of which was required to sustain a fraudulent inducement claim. Classic Comfort asserts that Miller "failed to point to a single legal authority which supported her theory that merely invoicing a customer for more than an agreed upon contract price (if there was one) could substantiate a fraudulent inducement claim." Classic Comfort further asserts that Miller "failed to come forward with any evidence that she was entitled to maintain both a breach of contract claim and a fraudulent inducement claim" and admitted at trial that her damages for both claims were the same.

{¶ 47} With respect to the CSPA claim, Classic Comfort argues that Miller's CSPA claim lacked legal and factual support and that she failed to present any legal authority to support her position that "a mere change in price was actionable under the CSPA." Classic Comfort points out that Miller presented no credible evidence at trial that any of

its conduct was deceptive or unconscionable, and the trial court acknowledged this fact in its decision. According to Classic Comfort, "a trial court's failure to award fees where the claims are blatantly groundless constitutes an abuse of discretion."

{¶ 48} Classic Comfort asserts that Miller and defense counsel acted in bad faith, "which Ohio law recognizes as an alternative claim" for attorney fees, and raised "absurd" arguments, including that she was not liable because the invoices were directed to Bates or Bates Construction, even though she acknowledged that Bates had acted for her, that she was responsible for paying for what he had ordered, and that she had paid the first invoice from Classic Comfort (which named Bates). Classic Comfort contends that Miller could not "articulate a single legitimate reason for her claimed distrust" of the company.

{¶ 49} For all of these reasons, viewed as a whole, Classic Comfort asserts that it should have been compensated for its cost of defending Miller's claims and that the trial court erred in failing to hold a hearing on its motion for attorney fees.

{¶ 50} In response to Classic Comfort's third assignment of error, Miller argues that frivolous conduct "is not proved by winning a legal battle," and that a "party is not frivolous merely because a claim is not well grounded in fact." Miller asserts that R.C. 2323.51(A)(2)(a) was intended "to chill egregious, overzealous, unjustifiable and frivolous actions," in which "no reasonable lawyer could argue the claim." Miller relies on the trial court's judgment, which stated that "both parties had some merit in their claims," as establishing that her claims were not frivolous.

{¶ 51} In response to Classic Comfort's fourth assignment of error, Miller asserts that R.C. 2323.51(B)(1) "does not require a trial court to conduct a hearing." She asserts that her claims and defenses "did not rise to the level of frivolous conduct," noting that the

trial court denied Classic Comfort's motion for summary judgment. Miller argues that Classic Comfort's argument that she fabricated the facts in support of her claims and acted in bad faith were considered by the trial court, which determined that an award of attorney fees was not justified. She argues that Classic Comfort failed to demonstrate that her claims "were solely designed to harass or maliciously injure" Classic Comfort or that the claims lacked merit so as to be frivolous.

{¶ 52} In its reply, Classic Comfort cites *Briscoe v. U.S. Restoration & Remodeling Inc.,* 10th Dist. Franklin Nos. 14AP-533, 14AP-534, 2015-Ohio-3567, ¶ 38, in which the trial court summarily denied a motion for attorney fees "without providing any rationale or support" for its decision, and the appellate court found that the trial court had erred because defendants' motion had presented an arguable basis for a hearing,

{¶ 53} Classic Comfort also notes that the trial court's August 30, 2021 judgment following the trial was not appealed and is controlling. Classic Comfort argues that the "factual deficiencies" cited by the trial court in that judgment, namely Classic Comfort's delay in presenting the invoices and Miller's decision to rely on Bates, did not relate to the untruthfulness of the Miller's allegations asserted by Miller, which she "pursued to trial, even after admitting the allegations were not true throughout the litigation." Classic Comfort asserts that no reasonable lawyer would have pursued Miller's counterclaims, and the only reason counsel did so was to attempt to cajole Classic Comfort into taking less than Miller owed under the threat of an award under the CSPA. Classic Comfort asserts that when a party "persists in relying on an allegation or factual contention when no evidence supports it, then the party has engaged in frivolous conduct."

{¶ 54} With respect to awards of attorney fees, this Court has noted:

* * * Ohio follows the "American Rule," under which a prevailing party may not generally recover attorney fees. *Wilson Concrete Prods., Inc. v. Baughman,* Montgomery App. No. 20069, 2004-Ohio-4696, * * *, citing *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 179, 75 O.O.2d 224, 347 N.E.2d 527. Attorney fees may be awarded, however, if (1) a statute creates a duty, (2) an enforceable contract provision provides for an award of attorney fees, or (3) the losing party has acted in bad faith. *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702.

*Hagan v. Habitat Condominium Owners Assoc.*, 166 Ohio App.3d 508, 2006-Ohio-1970, 851 N.E.2d 544, ¶ 42 (2d Dist.).

**{¶ 55}** R.C. 2323.51(B)(1) provides:

Subject to divisions (B)(2) and (3), (C), and (D) of this section and except as otherwise provided in division (E)(2)(b) of section 101.15 or division (I)(2)(b) of section 121.22 of the Revised Code, at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.

**{¶ 56}** R.C. 2323.51(B)(4) states that "[a]n award made pursuant to division (B)(1)

of this section may be made against a party, the party's counsel of record, or both." Pursuant to R.C. 2323.51, frivolous conduct " 'is determined without reference to what the individual knew or believed.' " (Citations omitted.) *Namenyi v. Tomasello,* 2d Dist. Greene No. 2013-CA-75, 2014-Ohio-4509, ¶ 16.

{¶ 57} } R.C. 2323.51(A)(1)(a) defines "conduct" as the "filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action."

{¶ 58} R.C. 2323.51(A)(2)(a) defines "frivolous conduct" as follows:

Conduct * * * that satisfies any of the following: (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are

not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶ 59} As further noted in *Namenyi*:

"[N]o single standard of review applies in R.C. 2323.51 cases." *Wiltberger v. Davis,* 110 Ohio App.3d 46, 51, 673 N.E.2d 628 (10th Dist.1996). When the question regarding what constitutes frivolous conduct calls for a legal determination, such as whether a claim is warranted under existing law, an appellate court is to review the frivolous conduct determination de novo, without reference to the trial court's decision. *Nat'l Check Bur.,* 2d Dist. Montgomery No. 21051, 2005-Ohio-6679, at ¶ 10; *accord Riverview Health Inst., L.L.C. v. Kral,* 2d Dist. Montgomery No. 24931, 2012-Ohio-3502, ¶ 33. * * *

"In contrast, if there is no disputed issue of law and the question is factual, we apply an abuse of discretion standard of review." *Riverview Health Inst., L.L.C.* at ¶ 33, citing *Natl. Check Bur.* at ¶ 11. * * *

*Namenyi* at ¶ 19-20.

{¶ 60} As this Court has noted:

While R.C. 2323.51(B) allows courts to award fees, R.C. 2323.51(B)(2) contains certain requirements before the court can do so. First, the court must set "a date for a hearing to be conducted in accordance with division (B)(2)(c) of this section, to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to

be made, the amount of that award." R.C. 2323.51(B)(2)(a). Second, the court must send notice of the hearing date to all parties and counsel accused of frivolous conduct and to the affected parties. R.C. 2323.51(B)(2)(b).

Third, under R.C. 2323.51(B)(2)(c) the court then:

Conducts the hearing described in division (B)(2)(a) of this section in accordance with this division, allows the parties and counsel of record involved to present any relevant evidence at the hearing, including evidence of the type described in division (B)(5) of this section, determines that the conduct involved was frivolous and that a party was adversely affected by it, and then determines the amount of the award to be made.

The evidence R.C. 2323.51(B)(5) refers to includes "an itemized list or other evidence of the legal services rendered, the time expended in rendering the services," and "an itemized list or other evidence of the costs and expenses that were incurred in connection with that action or appeal and that were necessitated by the frivolous conduct, including, but not limited to, expert witness fees and expenses associated with discovery." R.C. 2323.51(B)(5)(a) and (b).

We have previously held that some requirements in R.C. 2323.51(B)(2) may be waived. *Whitt v. Whitt*, 2d Dist. Greene No. 2003-CA-82, 2004-Ohio-5285, 2004 WL 2245086, ¶ 18.

*Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 2021-Ohio-3049, 178 N.E.3d

71, ¶ 170-173.

{¶ 61}  In *Shields v. Englewood,* 172 Ohio App.3d 620, 2007-Ohio-3165 (2d Dist.), we stated:

> " 'When a frivolous conduct motion is filed, pursuant to R.C. 2323.51, the party against whom the motion is directed should be given opportunity to respond, as with any motion.   See Civ.R. 8; *Ohio Furniture Co. v. Mindala* (1986), 22 Ohio St.3d 99, 100, [488 N.E.2d 881,] footnote 4.   *If the motion has merit,* whether the party against whom it is directed responds or not, then the trial court must set a hearing as provided in R.C. 2323.51(B)(2)(a).   Such a hearing date provides an opportunity for each party to submit briefs and evidentiary materials which may support their respective positions.   The hearing is not required to be an oral hearing.   Whether the hearing is to be conducted on the submitted matters or orally remains discretionary with the trial court.' " (Emphasis sic.) *McKinney,* supra, quoting *In re Annexation of 18.23 Acres* (Jan. 11, 1989), Summit App. No. 13669, 1989 WL 1643 (George, J., concurring).

(Emphasis sic.)   *Id.* at ¶ 48.

{¶ 62}  The Tenth District has discussed the significance of "arguable merit" in an R.C. 2323.51 motion as follows:

> * * * [A]lthough not explicitly required by the statute, we have held that a trial court must schedule a hearing where a motion demonstrates "arguable merit."   *Middle W. Spirits, L.L.C. v. Gemini Vodka, Ltd.*, 10th Dist. No. 20AP-118, 2021-Ohio-1503, ¶ 16.   *See Cortext Ltd. v. Pride Media*

*Ltd.*, 10th Dist. No. 02AP-1284, 2003-Ohio-5760, ¶ 13 ("The key to this court's analysis of the hearing requirement pursuant to R.C. 2323.51 is that the trial court may deny an oral hearing only to those motions which 'on their face reveal the lack of a triable issue.' ") (Internal citation omitted.); *Brisco* at ¶ 37. *See also Ohio Power Co. v. Ogle*, 4th Dist. No. 12CA14, 2013-Ohio-1745, ¶ 33 (stating that the "trial court must only schedule a hearing on those motions [for sanctions] which demonstrate arguable merit"); *Harold Pollock Co., LPA v. Bishop*, 9th Dist. No. 12CA010233, 2014-Ohio-1132, ¶ 20 ("R.C. 2323.51 requires a hearing when a motion for sanctions demonstrates arguable merit.") (Internal citation and quotation omitted.). However, where a trial court determines there is no basis for the imposition of sanctions, the trial court has discretion to deny the motion for sanctions without a hearing." *Middle W. Spirit*s at ¶ 16. Thus, "[t]he decision of a trial court to deny a hearing on a motion for sanctions will be reviewed to determine whether there exists an arguable basis for sanctions." (Internal citation and quotation omitted.) *Payne v. ODW Logistics, Inc.*, 10th Dist. No. 19AP-163, 2019-Ohio-3866, ¶ 17.

Similarly, some appellate courts have found it is reversible error for a trial court to "arbitrarily" deny a motion for sanctions, which occurs "when (1) the record clearly evidences frivolous conduct and (2) the trial court nonetheless denies a motion for attorney fees without holding a hearing." (Citation and quotation omitted.) *Polk v. Spirit Homecare, Inc.*, 1st Dist. No. C-120088, 2012-Ohio-4948, ¶ 6. *See Galena v. Delaware Cty.*

*Regional Planning*, 5th Dist. No. 10 CAE 09 0076, 2011-Ohio-2982, ¶ 38 (stating that a trial court "abuses its discretion when it arbitrarily denies a request for attorney fees") (Internal citation and quotation omitted.).   Other appellate courts have found that "a hearing is unnecessary" if the court "has sufficient knowledge of the circumstances for the denial of the requested relief and the hearing would be perfunctory, meaningless, or redundant." (Citation and quotation omitted.)   *Internatl. Union of Operating Engineers, Local 18 v. Laborers' Internatl. Union of N. Am., Local 310*, 8th Dist. No. 104774, 2017-Ohio-1055, ¶ 18.   *See Dennison v. Lake Cty. Commrs.*, 11th Dist. No. 2013-L-097, 2014-Ohio-4295, ¶ 15; *Brock-Hadland v. Weeks*, 7th Dist. No. 13 MA 170, 2015-Ohio-834, ¶ 10 (stating that no hearing required where a motion for sanctions "obviously lacks merit" such that "there is no possible basis for the award").   *See also T.M. v. J.H.*, 6th Dist. No. L-10-1014, 2011-Ohio-283, ¶ 96 (stating that "no hearing is required to deny * * * a motion [for sanctions], due process demands such a hearing when an award may be made").

(Brackets sic.)   *Russell v. Ryan*, 2021-Ohio-2505, 175 N.E.3d 969, ¶ 15-16 (10th Dist.).

{¶ 63} Regarding Miller's counterclaim for breach of contract, it is well settled that the "elements of a breach of contract claim are 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.' * * *." *Becker v. Direct Energy, LP,* 2018-Ohio-4134, 112 N.E.3d 978, ¶ 38 (2d Dist.).

{¶ 64} In its motion for attorney fees, Classic Comfort directed the court's attention to Miller's and Bates's depositions.   Classic Comfort asserted that paragraphs 2 to 5 of

Miller's counterclaim were inaccurate in that Miller herself did not contact Classic Comfort and agree to pay $25,000 for the purchase and installation of the radiant heating system as alleged. Miller testified in her deposition that she decided to purchase the radiant heating system in June or July 2019, and that she had Bates contact Classic Comfort; she did not talk with the company herself. Miller also admitted that she did not know what was discussed between Bates and Classic Comfort's representative, David Kruckeberg, in June or July 2019.

{¶ 65} Classic Comfort also asserted that Miller was untruthful in paragraphs 8, 9, 13, and 14 of her counterclaim when she alleged that wire mesh and plumbing services had been included in her contract with Classic Comfort. In his deposition, Bates stated that he did not think the cost of the wire mesh or installation of water lines had been included in the cost of any proposal made by Classic Comfort.

{¶ 66} The following exchange occurred during Miller's deposition:

Q. Is there anything else, any other work that you had to pay for that you believe that should have been included in the $25,000 number?

A. The mesh sheeting that went down over the PEX waterlines was requested by David Kruckeberg, and I had to go - - he gave us the name of the place, Sitebound, to purchase that from.

Q. When you say it was requested by David Kruckeberg, what do you mean by that?

A. He requested the metal sheeting, mesh sheeting to go down to hold the waterline in place.

Q. Did he make that request to you?

A.   No, not directly.

Q.   It would have been to Mr. Bates, wouldn't it have?

A.   Yes.

Q.   Are you aware that Mr. Bates testified that the mesh sheeting was not something that was included within the scope of the agreement?

A.   No.

Q.   Have you ever talked to Mr. Bates about that?

A.   About what?

Q.   What was included in the $25,000 and what was not?

A.   *I had no reason to discuss that with him.*

(Emphasis added.)

{¶ 67} Given Miller's limited personal contact with Classic Comfort and her admitted lack of knowledge regarding what was included in the alleged contract and what was not, we agree with Classic Comfort that she made factual contentions in her counterclaim for breach of contract that lacked any evidentiary support.   In other words, Classic Comfort's motion for attorney fees as to Miller's breach of contract claim had arguable merit.

{¶ 68} With respect to Miller's counterclaim for fraudulent misrepresentation, we note that the elements of a fraudulent misrepresentation are: 1) a false representation; actual or implied, or the concealment of a matter of fact, material to the transaction; made falsely; 2) knowledge of the falsity - or statements made with such utter disregard and recklessness that knowledge is inferred; 3) intent to mislead another into relying on the representation; 4) reliance - with a right to rely; 5) injury as a consequence of that reliance.

*In re Estate of Kirkland*, 2d Dist. Clark No. 2008-CA-57, 2009-Ohio-3765, ¶ 20-25, citing *Manning v. Len Immke Buick, Inc.*, 28 Ohio App.2d 203, 205, 276 N.E.2d 253 (1971). All of these elements must be present if actionable fraud is to be found; the absence of one element is fatal to recovery. *Id*. at ¶ *25.*

{¶ 69} Classic Comfort's argument that the fraudulent misrepresentation claim was unwarranted was focused on paragraphs 23 and 26 in Miller's counterclaim, wherein she alleged that Classic Comfort "intentionally and knowingly defrauded her" by representing that it was able to "complete the purchase and full installation of the radiant heating system, including but not limited to all required materials, labor and sale tax" for $25,000. Classic Comfort argued that the only evidence Miller offered in support of her fraudulent misrepresentation claim was that Classic Comfort's invoices exceeded $25,000. Given the trial court's determination that Miller lacked involvement in the entire process and instead relied upon Bates to communicate with Classic Comfort, her allegations that Classic Comfort knowingly and intentionally mislead her, and that she had a right to rely on its misrepresentations, were wholly unsubstantiated by the record. The trial court determined that the evidence established that the parties had entered in a time and materials arrangement without a minimum price and that Miller had "no legal defense to the non-payment" of the invoices. As such, we conclude that Classic Comfort's motion for attorney fees had arguable merit as to Miller's pursuit of her counterclaim for fraudulent misrepresentation.

{¶ 70} Finally, regarding Miller's counterclaim pursuant to the CSPA, R.C. 1345.02 defines unfair or deceptive acts, allows for attorney fees, and states:

(A) No supplier shall commit an unfair or deceptive act or practice in

connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:

(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

(3) That the subject of a consumer transaction is new, or unused, if it is not;

(4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;

(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;

(6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;

(7) That replacement or repair is needed, if it is not;

(8) That a specific price advantage exists, if it does not;

(9) That the supplier has a sponsorship, approval, or affiliation that

the supplier does not have;

(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

**{¶ 71}** This Court has noted:

"Unconscionability includes both ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' " [*Taylor Bldg. Corp. of Am. v. Benfield*], 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12,] at ¶ 34, quoting *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993). (Other citations omitted.) As a result, "[t]he party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Id.*

*Gaither v. Wall & Associates, Inc.,* 2017-Ohio-765, 79 N.E.3d 620, ¶ 18 (2d Dist.).

**{¶ 72}** R.C. 1345.09(F) provides:

The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code, if either of the following apply:

(1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith;

(2) The supplier has knowingly committed an act or practice that violates this chapter.

{¶ 73} Classic Comfort's argument focused on Miller's Supplementary Responses to Plaintiff's Discovery Requests, Exhibit A to its motion, and specifically to responses 4 and 5. Therein, Miller was asked to describe each unfair or deceptive act or practice in which Classic Comfort had engaged, and with respect to each, to identify the subsection of R.C. 1345.02(B), the Ohio Administrative Code and/or the rule adopted pursuant to R.C. 1345.05 that Classic Comfort had violated, as well as the date the act or practice had occurred and the person who had engaged in the act or practice. Miller responded in part as follows: "Answer: * * * The specific subsections (1) through (10) are not applicable, as the conduct of [Classic Comfort] does not fall within the specified subsections. Likewise, the conduct of [Classic Comfort] does not fall within the specified provisions of the Ohio Administrative Code. * * *."

{¶ 74} As noted above, Miller provided this response only after being admonished by the court and compelled to do so. In her deposition, Miller was asked, one by one, whether Classic Comfort had made any of the representations to her enumerated in R.C. 1345.02(B)(1)-(10), and she responded in the negative to each question.

{¶ 75} The following exchange occurred during Miller's deposition:

Q. What is your understanding of your claim against [Classic Comfort] under the [CSPA]?

A. I believe it was about the contract price and not having a written contract and I guess that's it.

* * *

Q. Did you ask Mr. Kruckeberg or [Classic Comfort] for a written agreement?

A.  No, I didn't.

Q.  In fact, there was no written agreement, was there?

A.  No, there was no written agreement.

Q.  And then you say that the - - there was nothing else, so it's just those two bases for your [CSPA] claim; is that right?

A.  Yes.

{¶ 76} Given that Miller could not identify any deceptive practice by Classic Comfort, and that she had no basis to assert the unconscionability of the alleged contract, Classic Comfort's motion for attorney fees regarding her counterclaim pursuant to the CSPA demonstrated arguable merit.

{¶ 77} Given that Classic Comfort's motion for attorney fees had arguable merit as to each of her claims, we conclude that it was arbitrary for the court to deny the motion without a hearing pursuant to R.C. 2323.51(B)(2)(a).   While the court determined that an evidentiary hearing was not necessary due to the court's having presided over the bench trial and the court's involvement in the various pretrial motions, we cannot conclude on this record that a hearing would be perfunctory, meaningless, or redundant.

{¶ 78} Classic Comfort's fourth assignment of error is sustained. The third assignment of error is rendered moot because the matter is being remanded for an evidentiary hearing.

{¶ 79} The trial court's September 29, 2021 judgment denying Classic Comfort's motion for attorney fees is reversed; the matter is remanded for an evidentiary hearing and reconsideration of Classic Comfort's motion for attorney fees and expenses, pursuant to R.C. 2323.51, to determine if Miller engaged in frivolous conduct such that Classic

Comfort was adversely affected.   The trial court's September 14, 2021 judgment denying Classic Comfort's motion for prejudgment interest is also reversed, and that matter is remanded for the trial court to determine the accrual date of the invoices and the appropriate interest rate for prejudgment interest.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Jody M. Oster
Randall E. Breaden
Hon. Jonathan P. Hein